W. S. WITHAM, *Appellant*, v. LLOYD M. SHEPARD AND GLADYS B. SHEPARD, HIS WIFE, *Appellees*.

Opinion filed July 1, 1922.

While an application for the enforcement by specific performance of a contract for the sale of real estate, is addressed to the sound judicial discretion of the chancellor, yet such discretion is governed by the provisions and principles of law and equity that are applicable to the particular facts and circumstances of the case, and if it appears on appeal that the principles of equity justify specific performance and no provision of law would be violated by enforcing specific performance, a decree refusing such relief may be reversed, though

if the rights and equities as alleged depend upon a determination of the probative force of conflicting testimony, the finding of the chancellor on such testimony and the resulting deccree will not be disturbed on appeal unless shown to be clearly wrong.

An Appeal from the Circuit Court of Dade County; H. Pierre Branning, Judge.

Affirmed.

*Hudson, olfWe & Cason,* for Appellant;

*Shutts & Bowen,* for Appellees.

WHITFIELD, J.—This appeal is from a decree dismissing a bill of complaint brought to enforce the specific performance of a contract for the sale of real estate.

While the application for the enforcement by specific performance of a contract for the sale of real estate, is addressed to the sound judicial discretion of the chancellor, yet such discretion is governed by the provisions and principles of law and equity that are applicable to the particular facts and circumstances of the case, and if it appears on appeal that the principles of equity justify specific performance and no provision of law would be violated by enforcing specific performance, a decree refusing such relief may be reversed, though if the rights and equities as alleged depend upon a determination of the probative force of conflicting testimony, the finding of the chancellor on such testimony and the resulting decree will not be disturbed on appeal unless shown to be clearly wrong. See Murphy v. Hohns, 73 Fla. 803, 74 South. Rep. 973; Dixie Naval Stores Co. v. German-American Lumber Co., 76 Fla 339, 79 South. Rep. 836; Ullendorff v. Graham, 80 Fla. 845,

87 South. Rep. 50; Kalil v. Florida Nat. Bank of Gainesville, 81 Fla. 543, 88 South. Rep. 383.

It is alleged that on November 8, 1919, Lloyd M. Shepard was the owner in fee of described real estate in Dade County, Florida; that he had directed his agents, the Standard Realty Company, to procure for him a purchaser for the property on terms satisfactory to the owner; that the following contract was entered into:

### "CONTRACT FOR PURCHASE AND SALE OF REAL ESTATE

"Miami, Fla., Nov. 8, 1919.

"Received of W. S. Witham, the sum of Five Hundred ($500.00) Dollars to apply as part of purchase price on the following described property, situate in the County of Dade, State of Florida, viz:

Lots Eight (8) and Nine (9) of
Block Twenty-one (21), North,
City of Miami.

"Purchase price Twenty Thousand ($20,000.00) Dollars.

"Terms: One-third to one-half cash of which the above mentioned $500.00 is a part to be paid upon delivery of warranty deed and abstract of title showing marketable title free and clear from incumbrance. The balance of $10,000.00 is to be secured by a mortgage on the above described property, payable on or before one year with interest at 6% per annum. All liens and special assessments prior to date of delivery of deed is to be paid by the vendors. The 1919 general taxes are to be prorated to date of delivery of deed. All fire insurance policies and rents are to be prorated to date of delivery of deed. It is understood and agreed by and between the parties hereto that this transaction is to be consummated on or before thirty

days from date, or upon approval of title by attorneys of Mr. Witham.

"Should said purchaser fail to perform this contract promptly as specified herein, the money herein receipted for shall be forfeited and retained by the STANDARD REALTY Co., for the vendor as liquidated damages, to apply the same, first, to the payment of any expenses incurred for the vendor by the agent in said matter, and second, to the payment of a commission of.........for services in procuring this contract, rendering the overplus to the vendor, and this contract shall be null and void.

"Time is the essence of this contract, and of all the conditions hereof.

"This sale is made subject to the approval of the vendor of said property. Should the vendor disapprove of the sale, then in such case the money herein receipted for shall be refunded and the STANDARD REALTY CO., released from any liability.

"STANDARD REALTY CO., Agents,

By (Sgd.) WM. HARRISON.

"Accepted: (Sgd.) W. S. WITHAM."

The agent wired the owner "Have sold Third Street twenty thousand net and accepted part payment. Terms one-third to one-half cash, balance within one year six per cent. Please wire confirming." The owner replied: "Sale confirmed. Will accept one-third or more cash, balance in one to five years at eight per cent." It is alleged that "thereupon the change and modification suggested in the telegram last above set out was accepted and agreed to by" the complainant purchaser. Subsequently the owner declined to make conveyance. The bill prays for specific performance by requiring the owner to convey and to

secure the joinder therein of his wife, or for a conveyance by the owner with a reduction in price if the wife's dower interest is not conveyed and for other appropriate relief. A demurrer of the wife to the bill of complaint was sustained and the bill as to her was dismissed, she not having joined in the contract for the sale of the property.

It appears that after the receipt by the Standard Realty Company of the wire from the owner, *viz*, "Sale confirmed. Will accept one-third or more cash, balance in one to fixe years at eight per cent," a telegram containing the following was sent to the owner: "Purchaser has not decided whether he will pay one-third or one-half cash, but will pay the balance on or before one year at six per cent." To this the owner replied: "Condition of sale one-third or more cash, balance in one to two years at 8 per cent." The wire in reply to the last contained no reference to the rate of interest and the purchaser had knowledge of the telegrams sent and received. When the notes for deferred payments were presented to the vendor, they provided for payment "on or before" one year with interest at 6% per annum. This was objected to by the owner vendor and after some discussion the owner declined to proceed further. There is a conflict in the testimony as to whether after the 6% notes were rejected by the vendor, the real estate agent told the owner before he withdrew the land from the market, that the agent was authorized by the purchaser to make the notes for 8% interest instead of 6% interest if that was insisted on by the vendor.

The telegrams and the testimony indicate that the purchaser did not insist that the wire from the owner stating, "Sale confirmed. Will accept one-third or more cash, balance in one to five years at eight per cent," was an unqualified confirmation of the contract of sale under

November 8, 1918, by which the deferred payments were to be made within one year at 6%, and that the latter part of the telegram as to "balance in one to five years at eight per cent" was surplusage or irrelevant matter, but it appears from the pleadings that the complainant purchaser relied on an aceptance by him of the counter proposition of "balance in one to five years at eight per cent," and the chancellor has on conflicting testimony as to such alleged acceptance found and decreed for the vendor, and it does not appear that the finding and decree are clearly erroneous.

Affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WESR, J. J., concur.