JOHN L. WIMBISH, *Appellant,* v. E. A. DOUGLASS, *et al.,* *Appellees.*

Division B.

Opinion Filed July 12, 1926.

1.  While an application for the enforcement by specific performance of a contract for the sale of real estate, is addressed to the sound judicial discretion of the Chancellor, yet such discretion is governed by the provisions and principles of law and equity that are applicable to the particular facts and circumstances of the case, and if it appears on appeal that the principles of equity justify specific performance and no provision of law would be violated by enforcing specific performance, a decree refusing such relief may be reversed.

2.  In an equity case where the rights and equities as alleged depend upon the weight and probative force to be given and applied to conflicting testimony the findings of the Chancellor on such testimony and the decree which he shall have entered upon such finding will not be disturbed on appeal unless it is clearly shown to be wrong.

3.  Record of the pleadings and evidence examined and adjudged to be sufficient to support the findings of the Chancellor and the decree should therefore be affirmed.

An Appeal from the Circuit Court for Marion County; W. S. Bullock, Judge.

Affirmed.

*Johnston & Garrett*, for Appellant;

*Kay, Adams & Ragland, J. W. Blalock* and *Cooper, Cooper & Osborne*, for Appellees.

BUFORD, J.—This was a suit brought to enforce the specific performance of a contract for the purchase and sale of real estate; the suit was brought by the assignee of the original contract purchaser against the vendors and their assignees. The contract was as follows:

ARTICLES OF AGREEMENT, made in triplicate on this 25th day of January, A. D. 1921, by and between Roy F. Symes and wife Florence I. Symes and E. A. Douglass and wife, Virginia M. Douglass, of the county of Seminole and State of Florida, parties of the first part, and F. W. Hanes, of the County of Yadkin and State of North Carolina, party of the second part.

WITNESSETH That if the said party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said parties of the first part hereby covenant and agree to convey and assure unto the said party of the second part in fee simple, free and clear of all incumbrances whatsoever, except a certain mortgage hereinafter mentioned, by a good and sufficient deed, those certain lots, pieces and parcels of land with all appurtenances thereunto belonging or otherwise appertaining, situate, lying and being in the County of Seminole and State of Florida, more particularly described as follows, to-wit:

'Lots three (3), four (4), seven (7) and eight (8) of block two (2) Tier Four (4) of Sanford, Florida, as per plat thereof, duly recorded in Plat Book 1, pages 56-64 of the public records of Seminole County, Florida.'

And the said party of the second part hereby covenants

8—Vol. 92.

and agrees to pay to the parties of the first part the sum of $110,000, representing the balance due on account of the purchase price, in the manner folowing, to-wit: $63,000.00 on or before forty-five days after date, with interest at the rate of six per cent per annum from date, and the party of the second part further agrees to assume to the extent of $12,000.00 a mortgage at this time outstanding against the said property for $15,000.00 heretofore made and executed by the parties of the first part unto one David H. Thomas; and further, at the time of the payment of the sixty-three thousand ($63,000.00) dollars, as aforesaid, to make and execute unto the parties of the first part a mortgage for $35,000.00 on the above described property, subject to the unpaid balance of $12,000.00 of the Thomas mortgage, said mortgage for $35,000.00 to be payable on or before one year after date, and to bear interest from the date of this contract at the rate of eight per cent per annum, interest thereon payable semi-annually.

And it is agreed that should the party of the second part, upon the expiration of the period of forty-five days from the date hereof be unable to make the payment of $63,000.00 as above stated, that in such case, in lieu thereof, the parties of the first part will accept a payment of $10,000.00 from the party of the second aprt to apply on the purchase price, with interest on the $63,000.00 at the rate of six per cent, per annum, for the said period of forty-five days, and will thereupon grant unto the party of the second part a further extension of 90 days for the payment of the cash balance amounting to $53,000.00, to bear interest at the rate of eight per cent per annum for the said 90 day extended period.

And the said parties of the first part agree to pay all taxes, assessments or other impositions that have been

legally assessed or imposed upon or against said lands up to and including the year 1920.

And the said party of the second part agrees that in case of failure on his part to make any of the payments hereinabove specified, or to perform any of the covenants on his part hereby made and entered into, *that this contract shall thereupon at the option of the parties of the first part become forfeited and terminated,* and in such case, the party of the second part agrees to forfeit all payments made by him on this contract, and that said payments shall be retained by the parties of the first part in full satisfaction and in liquidation of all damages by them sustained; and it is further agreed by and between the parties hereto, that during the existence of this contract the parties of the first part shall collect all rents from said property for the account of the party of the second part, and the total amount of the rental so collected, should the party of the second part well and faithfully comply with the terms of this contract, shall be applied by the parties of the first part as a credit on the agreed purchase price of the property hereinabove described, and shall be deducted from the $63,-000.00 cash payment to be made by the party of the second part to the parties of the first part under the provisions of this agreement.

It is mutually agreed by and between the parties hereto that the time of payment shall be considered and treated as the essence of this contract and the failure upon the part of the party of the second part to make any of the payments of either principal or inteerst at the time hereinabove stated, and in the manner hereinabove specified, shall work a forfeit of this contract and in event of a forfeiture being declared by the parties of the first part, all rights, of the party of the second part hereunder shall immediately cease and determine, and the party of the second part shall there-

upon execute in writing a release of this contract unto the parties of the first part.

It is further mutually agreed by and between the parties hereto that all the covenants and agreements hereinabove contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals in triplicate on this the day and year first above written.''

The contract was endorsed as follows:

''For value received I hereby transfer all my right, title and interest to John L. Wimbish and he hereby agrees to assume all my obligations to the within contract this March 2, 1921.''

The salient facts disclosed by the record may be stated as follows:

E. A. Douglass and Roy F. Symes owned some property located in the center of the City of Sanford, Seminole County, Florida. They built thereon a building known as the ''Welaka Block.''

On January 25th, A. D. 1921, Douglass and Symes contracted in writing with F. W. Hanes to convey the property to him for $110,000.00.

John L. Wimbish, living in Winston-Salem, North Carolina, was persuaded by E. A. Douglass, who acted for himself and Symes in the matter, to take over the Hanes Contract for the ''Welaka Block.''

Wimbish paid $10,000.00 in cash as a down payment on the property.

Wimbish sold out his holdings in North Carolina and moved his family, as well as himself, to Sanford, Florida, for the purpose of taking over the management of the ''Welaka Block.''

Wimbish had the assurance of E. A. Douglass that he could get a $100,000.00 loan on the building and with this could pay off the balance of the purchase money, and that the rentals from the building would enable him to meet the interest and principal of the amount borrowed and leave him a margin of about $4,500.00 to live on, until eventually he had paid off the amount due for the loan.

After Wimbish moved to Sanford, Douglass refused to put him in possession of the property and would not render the rents available to him, and he has never received any rent.

The proposed $100,000.00 loan on the building proved to be unavailable, and Douglass was not able to help Wimbish finance the transaction as he had stated he would.

Under the strict terms of the contract Wimbish was to have 45 days from the date of the Hanes contract in which to pay $10,000.00, and if he made said payment within said time was to be given 90 days further in which to pay a balance of $53,000.00, which was to constitute the entire cash payment for the building.

The purchase price of $110,000.00 was to be made as follows:

Cash within 45 days ................... $10,000.00
Cash within 90 days from the expiration of
    said 45 days ........................ 53,000.00
Amount of mortgage existing against the
    property assumed by purchaser ...... 12,000.00
Mortgage to be made by the purchaser to
    the vendors ......................... 35,000.00

Total purchase price ................. $110,000.00

The date of the Hanes contract being the 25th of January, A. D. 1921, the 45 days expired on March 11th, 1921,

and the 90 days additional period expired on June 9th, 1921.

As stated above, Wimbish paid the $10,000.00 payable by March 11th, 1921, and thereby became entitled to the extension, under the terms of the contract, until June 9th, 1921.

When it became apparent that Wimbish would not be able to pay the $53,000.00 due on or before June 9th, 1921, Douglass agreed to extend the time for such payment.

Throughout the transactions between the vendors and Wimbish, Douglass acted for both himself and Roy F. Symes, the other owner.

Extensions of time were granted from time to time and a letter signed by Douglass is in the record at page 275, dated September 14th, 1921, which says:

"We have agreed with Captain Wimbish, as the title is in us, to make the trust deed and give him one year to pay us."

On October 7th, A. D. 1922, Douglass and Symes conveyed the property to J. T. Blalock and Forrest Lake.

On November 27th, A. D. 1922, Blalock and Lake, joined by their wives, conveyed said property to the Welaka Investment Company, a Florida Corporation.

The Welaka Investment Company is a corporation owned practically by J. T. Blalock and Forrest Lake.

Blalock, in his testimony, says that Douglass and Symes also have an interest in the corporation.

At the time this suit was filed by Wimbish for specific performance of the original contract with Hanes, assigned to Wimbish, the Welaka Investment Company held the record title to the property described in said contract.

The record shows that prior to the purchase of Blalock and Lake that both Blalock and Lake were cognizant of the fact that Wimbish was the owner and holder of some

sort of a contract for the purchase of the property, which knowledge was sufficient to put them upon inquiry of Wimbish as to what rights he claimed under the contract, and failing to make such inquiry they must be assumed to be purchasers with notice.

The Welaka Investment Company, a Corporation, was organized by Blalock and Lake to take over this property; and Blalock and Lake in the transaction acted as officers on behalf of the corporation. The corporation is chargeable with the knowledge possessed by its officers and therefore this corporation does not occupy the position of a bona fide purchaser without notice.

Attached to the Bill of Complaint there was a copy of the supplemental agreement which was alleged to have been entered into between Douglass and Wimbish which somewhat changed the terms of the original contract for purchase and sale. This agreement on motion was stricken from the record.

In the answer which was filed, it is contended that Wimbish forfeited all his rights under the contract by not making payments at the time required and that he had by default in making such payment forfeited that money which he had paid on the contract. And it is further contended that the Welaka Investment Company is a bona fide purchaser without notice and should not be held to reconvey the property so that specific performance of the contract of sale assigned to Wimbish may be had.

A master was appointed, testimony was taken and an accounting was made under order of Court. Final decree was entered which was later modified. In this decree the equities were found to be with the Complainant. Specific performance of the contract was ordered under conditions to be met by the complainant. In the decree it was stipulated that the complainant should have credit for the

amount of the net rents. The complainant contended that he was entitled to credits for the rental value of the property and he entered his appeal from the final decree and assigned as error this stipulation contained in the decree.

The appellees filed cross assignments of error as follows:

*"Cross-Assignment of Error No. 1.*

Each of said respondents says that the Court erred in entering said order striking the counter-claim of said respondents, in that said counter-claim was entered for the purpose of obtaining affirmative relief for said respondents and prayed for such affirmative relief.

And each of said respondents, severally, hereby assign as further error (cross-assignments of error Nos. 2 to 8 inclusive) to the order of said Court determining the equities in said cause and ordering and accounting, which said order was entered in said cause on the 22nd day of October, A. D. 1923, and was filed on October 25th, A. D. 1923, and order has not been recorded in any book of record of said Clerk of said Court.

*Cross-Assignment of Error No. 2.*

Each of said respondents says that the Court erred in finding that the provisions of the contract alleged in the Bill of Complaint, which made time of the essence, had been waived, and that time was not of the essence of the contract.

*Cross-Assignment of Error No. 3.*

Each of said respondents says that the Court erred in finding that the Complainant, John L. Wimbish, ever so performed the contract upon his part as to entitle the Complainant to the possession of the property.

*Cross-Assignment of Error No. 4.*

Each of said respondents says that the Court erred in finding that T. J. Blalock and Forrest Lake, were not

bona fide purchasers for value, and that they had such
notice as would place upon them the duty of inquiry as
to the rights of the Complainant further than that shown
by the testimony to have been made by them.

*Cross-Assignment of Error No. 5.*

Each of said respondents says that said Court erred in
finding that the alleged contract upon which specific per-
formance was asked had not been abandoned, and forfeited
by the complainant.

*Cross-Assignment of Error No. 6.*

Each of said respondents says that said Court erred in
finding the complainant, John L. Wimbish, to be entitled
to specific performance in that it appears from the record
and testimony that said complainant was never ready,
willing, and able to perform the contract himself.

*Cross-Assignment of Error No. 7.*

Each of said respondents says that said Court erred in
entering said order determining the right to specific per-
formance to be in the Complainant in that there appears
no proof or showing in the record that the Complainant
was or ever had been able to perform said contract on his
part.

*Cross-Assignment of Error No. 8.*

Each of said respondents says that said Court erred in
finding in said order that Complainant, John L. Wimbish,
was entitled to specific performance in that it does not
appear that Complainant ever demanded performance of
the same, nor ever tendered the purchase price to the re-
spondents, and made demand for performance on their
part.

And each of said respondents, severally, assigns (Cross-
Assignment of Error Nos. 9 and 10) the following errors
to the final decree dated April 19th, A. D. 1924, and re-

corded on April 12th, A. D. 1924, having been filed for record on that day among the records of the Clerk of the above Court in Chancery Order Book 'M' at page 305, and the modification order modifying the terms of said final decree, which said modification order was filed for record in the office of said Clerk of said Court on the 23rd day of April, A. D. 1924.

*Cross-Assignment of Error No. 9.*

Each of said respondents says that said Court erred in entering said final decree and modification order thereof, in allowing the complainant a credit of $3,063.63, said sum being the sum paid to one Mrs. Watson, as manager of the building in question, for services rendered by her as manager of the building and in and about the collection of rents for said building.

*Cross-Assignment of Error No. 10.*

Each of said respondents says that said Court erred in entering the final decree in charging the Respondents with the following rents and interest, to-wit:

For January, A. D. 1924...............$921.25
Interest from Feb. 1, 1924, to June 1,
    1924 @ 8% ......................   24.56
For February, A. D. 1924.............  921.25
Interest from March 1, 1924, to June 1,
    1924, @ 8% ......................   18.42
For March, A. D. 1924................  921.25
Interest from April 1, 1924, to June 1,
    1924, @ 8% ......................   12.28
For April, A. D. 1924................  921.25
Interest from May 1, 1924, to June 1,
    1924, @ 8% ......................    6.14
For May, A. D. 1924..................  921.25

said items not representing actual rents collected, but as shown by said decree, said rents being for a period subse-

quent to the time of the taking of testimony on account-ing, were figured on the basis of the general average of rents for the four months just preceding, and said re-spondents, severally, say that the court should have made provision for the determining of actual rents collected, and actual expenses to be credited the respondents for the period subsequent to that covered by the testimony on accounting.''

The main assignment of error may be disposed of by referring to and construing one clause in the sale contract to-wit: ''and it is further agreed by and between the parties hereto, that during the existence of this contract the parties of the first part shall collect all rents from said property for the account of the party of the second part, and the total amount of the rental so collected, should the party of the second part well and faithfully comply with the terms of this contract, shall be applied by the parties of the first part as a credit on the agreed purchase price of the property hereinabove described, and shall be de-ducted from the $63,000.00 cash payment to be made by the party of the second part to the parties of the first part under the provisions of this agreement.''

It will be observed that the amount of the rentals to be credited was stipulated to be the total amount of the rental so collected.

Our conclusion from an inspection of the record is that the contention of the complainant that he was entitled to credit for the full rental value of the property is not ten-able and that the decree of the Court in this regard is in accordance with the intent expressed in the contract and in accordance with equity and good conscience.

Under the facts as disclosed in the record in this case, we cannot say that the Chancellor was not justified in his findings and that his decree is unjust or inequitable. It

is true that under the facts disclosed in this record he might have been justified in reaching different conclusions, but these are matters in which the Chancellor's discretion and good judgment have been exercised with great care and based upon an intimate knowledge of all the material facts, and his findings must be given great weight and thorough consideration by the Appellate Court.

It is contended that time was of the essence of the sale contract. The Chancellor might have found this to be a fact, but his view appears to have been that while language was used in the contract to indicate this condition, language was also used which overcomes that presumption and that under the terms of the contract whether or not time was the essence thereof depended upon the option to be exercised by the Vendors to make it so; and he found that the Vendors did not exercise such option but on the other hand that the Vendors indulged the assignee of the contract in extension of the payment dates. There is sufficient evidence to support the view that the Vendors encouraged the assignee of the contract in delay and procrastination which occurred in and about carrying out the contract. Certainly the showing is abundant that the Vendors at no time exercised their option to declare the contract forfeited and that they at no time gave notice to the assignee of the contract that forfeiture would be declared.

In Witham v. Shepard et al., 84 Fla. 75, 92 South. Rep. 685, this Court held: "While an application for the enforcement by specific performance of a contract for the sale of real estate, is addressed to the sound judicial discretion of the Chancellor, yet such discretion is governed by the provisions and principles of law and equity that are applicable to the particular facts and circumstances of the case, and if it appears on appeal that the principles of equity justify specific performance and no provision of

law would be violated by enforcing specific performance, a decree refusing such relief may be reversed. * * * ''

In an equity case where the rights and equities as alleged depend upon the weight and probative force to be given and applied to conflicting testimony the finding of the Chancellor on such testimony and the decree which he shall have entered upon such finding will not be disturbed on appeal unless it is clearly shown to be wrong. Dixie Naval Stores Co. v. German American Lumber Co., 76 Fla. 339, 79 South. Rep. 836; Murphy v. Hohns, 73 Fla. 803, 74 South. Rep. 973; Kalil v. Fla. Natl. Bank of Gainesville, 81 Fla. 543, 88 South. Rep. 383; Boshier et al. v. Moeller, 83 Fla. 10, 91 South. Rep. 181.

In this case the findings of the Chancellor may reasonably be said to be based upon the pleadings supported by evidence found in the record and therefore the decree should be affirmed, and it is so ordered.

Affirmed.

WHITFIELD, P. J., AND TERRELL, J., concur.

BROWN, C. J., AND ELLIS AND STRUM, J. J., concur in the opinion.