THOMAS E. GARVIN, as Receiver of The Meyer-Kiser Bank of Indianapolis, *et al.,* v. FRANK FOX and WILLIAM M. GREVE, as Trustees.

160 So. 63.

Division A.

Opinion Filed December 17, 1934.

Petition for Rehearing Granted December 27, 1934.

As Modified on Petition for Rehearing January 15, 1935.

118

*Shutts & Bowen, H. N. Boureau* and *Charles A. Carroll,* for Appellants;

*Milam, McIlvaine & Milam,* for Appellees.

ELLIS, J.—In July, 1925, Albert A. Kotte executed to J. J. Kiser and Sol Meyer of Indianapolis, Indiana, as Trus-

tees, certain bonds payable to bearer in the sum of sixty-two thousand five hundred dollars. The bonds were in denominations of five hundred dollars and one thousand dollars. They were payable as follows: $6,000 on January 13, 1927; $6,500 on January 13, 1928; $7,000 on January 13, 1929; $8,000 on January 13, 1930; $8,000 on January 13, 1931; $8,000 on January 13, 1932; $19,000 on January 13, 1933.

In order to insure the payment of the bonds and the interest thereon as the principal and interest became due, Kotte and his wife, Grace Kotte, executed and delivered a mortgage or deed of trust to Kiser and Myer, as Trustees, on a certain lot embraced within the corporate limits of the City of Miami Beach, in Dade County, Florida. A building was erected on the land called the "Linden Apartments." The mortgage covered the new improvements about to be erected thereon and any and all furniture and furnishings therein and all and singular the tenements and hereditaments appertaining thereto.

The trust deed contained when executed the following clause:

"In case of the resignation of any trustee, his successor shall be appointed by Meyer-Kiser Bank, Indianapolis, Indiana, and notice of such appointment shall in each case be given in writing to the mortgagor. Failing such appointment and notice within thirty days after such resignation, the mortgagor shall appoint such successor. Every such appointment by whomsoever made shall be by instrument in writing, duly acknowledged, and a copy thereof shall be filed for record in the office of the Recorder of Dade County, Florida. Every such successor Trustee shall be an officer of Meyer-Kiser Bank, of Indianapolis, Indiana."

In February, 1926, Kotte and wife entered into a supple-

mental agreement with Kiser and Meyer wherein it was recited that "Under paragraph five, page 9," of the mortgage or deed of trust the above quoted clause appeared and that it was to the best interest of the parties and to further facilitate the administration of the trust and disposition of the bonds that the parties should strike from the said clause the words, "Each such successor trustee shall be an officer of the Meyer-Kiser Bank of Indianapolis, Indiana." It was agreed that the words should be stricken from the clause so that it would read as follows:

"In case of the death or resignation of any trustee, his successor shall be appointed by Meyer-Kiser Bank, Indianapolis, Indiana, and notice of such appointment shall in each case be given of writing to the mortgagor. Failing such appointment and notice within thirty days after such death or resignation the mortgagor shall appoint such successor. Each such appointment, by whomsoever made, shall be by instrument in writing, duly acknowledged, and a copy thereof shall be filed for record in the office of the Recorder of Dade County, Florida."

It may be noted in passing that the supplemental agreement misquotes the clause and erroneously refers to its position in the deed of trust. However, no point is made of the misprision in that clause. The words which were deleted from the clause by the supplemental agreement constituted the last sentence in the clause. The trust deed therefore as amended by the supplemental agreement provided that in the event of the resignation (or death) of any trustee his successor should be appointed by Meyer-Kiser Bank and notice of such appointment should in each case be given in writing to the mortgagor. The following sentence then appears: "Failing such appointment and notice within thirty days after such death or resignation, the mort-

gagor shall appoint such successor." That sentence, somewhat unclear in its meaning, we construe to convey the idea that in the event of the death or resignation of any trustee the Bank should fail to make an appointment of a successor and give to the mortgagor notice of such appointment within thirty days after the resignation of the trustee, then the mortgagor should appoint the successor to the resigning or deceased trustee.

The clause contained a provision which appellants here insist is very important as affecting the authority of the complainants below to maintain the suit. The provision is as follows: "Every such appointment by whomsoever made shall be by instrument in writing, duly acknowledged and a copy thereof shall be filed for record in the office of the Recorder of Dade County, Florida."

The instrument in writing constituting the appointment of a successor to a resigning or deceased trustee of lands held as security for the payment of a debt is an instrument concerning real property within the meaning of the statute relating to the record of conveyance of real estate. Sec. 5699 C. G. L. 1927. The word "Recorder" is a sufficient designation of the Clerk of the Circuit Court as the "recorder of deeds." Sec. 4858 C. G. L. 1927.

The supplemental agreement was duly recorded in March, 1926.

The Trustees Kiser and Meyer by an instrument in writing dated February 6, 1926, to which instrument Kotte and his wife, the mortgagors, were parties, resigned as Trustees and by consent of the Kottes relinquished, assigned, transferred and set over to William M. Greve, of Brooklyn, New York, and Frank Fox, of the same city, all the right, title and interest of Kiser and Meyer which they held as Trustees under the trust deed, the purpose being to vest in

Greve and Fox as trustees the rights, powers and trusts held by Kiser and Meyer. Kotte and wife joined in the instrument approving and ratifying the resignation of Kiser and Meyer as Trustees and the appointment of Greve and Fox to succeed them. The execution of the instrument was properly acknowledged for record, but was not filed for record as the supplemental agreement required.

On the same date the Meyer-Kiser Bank, of the one part, and Greve and Fox of the other part, entered into an agreement whereby the Meyer-Kiser Bank ratified and confirmed all acts of the resigning trustees and in exercise of its powers under the trust deed appointed Greve and Fox as successor Trustees, the two latter named persons joining in the execution of the instrument for the purpose of accepting the trust. That instrument was duly acknowledged for record, but was not filed for record as the trust deed required.

Now the bonds were purchased by the Meyer-Kiser Bank, which sold them later to Meyer-Kiser Corporation, of Indianapolis, which in turn sold them to The Prudence Company, Inc., a New York corporation. Those transactions occurred in the year 1925, several months after the execution of the trust deed.

The Meyer-Kiser Corporation, in April, 1926, advised the Prudence Company that it had instructed the Chase National Bank of New York to pay to the Prudence Company the face value of the coupons and bonds on all mortgage loans sold by the Meyer-Kiser Corporation to the Prudence Company until advised to the contrary. That communication was followed by one to the Chase National Bank to pay the bonds and coupons presented by the Prudence Company, charge the same to "our account," "mail

us the bonds and coupons, advising us. Please do not cancel the bonds and coupons."

The Chase National Bank wrote the Meyer-Kiser Bank in acknowledgment of the letter two days later and agreeing "to pay and charge to your account Miami mortgages and interest reading payable at your bank, returning them to you uncancelled by registered mail insured."

On December 9, 1932, Fox and Greve, as Trustees, exhibited their bill in the Circuit Court for Dade County against W. W. Wasson and wife of Pennsylvania, Albert A. Kotte, of Miami Beach, Florida, and Meyer-Kiser Bank of Indianapolis, Indiana, to foreclose the trust deed.

It was alleged that sundry of the bonds had been paid as the same fell due and there was a balance outstanding of $26,080. With interest from January 13, 1932; that balance was evidenced as alleged by twenty-six bonds numbered D-36 to D-61 inclusive of $500.00 each, and fourteen bonds numbered M-19 to M-32 inclusive, of $1,000 each; that of the balance thus outstanding, bonds numbered D-36 to D-34 of $500 each and bonds numbered M-19 to M-22 inclusive of $1,000 each were payable January 13, 1932; that none of them were paid; that the Prudence Company of New York is the owner of the defaulted bonds as well as those of the remainder mentioned.

Wasson and wife and the Meyer-Kiser Bank were made parties defendant because they claim or assert some right, title or interest in the mortgaged premises, or in the mortgage lien sought to be foreclosed, but alleged such interest to be inferior or subservient to the lien and the rights of the complainants.

The prayer was that the court should ascertain the amount due to the complainant including cost of collection and reasonable solicitor's fees for the complainants, which they

have agreed to pay; that the amount found to be due be. required to be paid and in default thereof that the property be sold and the purchaser thereof put into possession.

The bill alleges that Meyer and Kiser had resigned as Trustees and Greve and Fox were duly substituted as Trustees and had been acting as such since February 6, 1926. In December, 1932, the bill was amended by adding as defendant E. P. Duncan, as Liquidator of Meyer-Kiser Bank.

Three days later the bill was again amended by alleging that the mortgaged premises were improved by a large apartment building and that it was in possession of W. W. Wasson, who purchased the property subject to the mortgage and has assumed to pay it as part of the purchase price; that the property was mainly valuable for its rentals and Wasson was obtaining the rentals from the place and had refused to apply to the payment of the sums due any part of the revenues derived from the property, but is applying it all to his personal use. It was also alleged that the property would not produce upon a sale for cash a sum in excess of $20,000 and is therefore inadequate for the payment of the mortgage debt; that under the terms of the mortgage the issues and profits from the premises were encumbered and provision was made that the complainants were entitled to receive them. On that ground a receiver was asked for.

In January and February, 1933, decrees *pro confesso* were entered against Kotte and Wasson and wife. In March, 1933, The Meyer-Kiser Bank moved to dismiss the bill of complaint on the ground that in May, 1931, the Bank suspended the carrying on of business and its affairs were placed in the hands of J. J. Kiser, M. S. Cohn and Fred S. Meyer as liquidators to carry on and wind up its business and those liquidators are necessary parties.

Following that motion the bill was again amended by adding the names of the Liquidators of the Bank and eliminating the name of E. P. Duncan as Liquidator who was joined as a defendant by a former amendment of the bill. Then on May 1, 1933, the Liquidators and the Bank interposed their answer to the bill. The execution of the bonds by Kotte, also the execution of the trust deed to Kiser and Meyer to secure the payment of the bonds and interest, were admitted. The supplementary agreement was also admitted, as also the resignation of the trusteeship by Kiser and Meyer and the appointment of Greve and Fox as succeeding Trustees and the confirmation of that appointment by the Meyer-Kiser Bank. All those instruments in writing were executed on February 6, 1926.

The answer avers, however, that when the Meyer-Kiser Bank executed the agreement confirming the appointment of Greve and Fox as successor trustees it was agreed by Meyer and Kiser, The Prudence Company, Inc., as holder of the bonds secured by the mortgage or deed of trust, and Greve and Fox, who were named as successor trustees, that the agreement would be held by The Prudence Company and Fox and Greve for the protection of the Prudence Company and for its benefit and "that Kiser and Meyer would continue to act as Trustees under the mortgage or deed of trust" until such time as the Prudence Company and Fox and Greve "should exercise their right and option to substitute" Fox and Greve as trustees in place of Kiser and Meyer. It was also averred that the Prudence Company and Fox and Greve did not exercise the option until just prior to the filing of the bill.

It is averred that the Meyer-Kiser Bank is the owner and holder of certain of the bonds, the payment of which was secured by the deed of trust, which bonds are described

in the answer and amount to the sum of $22,500 and accumulated interest and that the property held by the trustees was held for the equal benefit and security of all who should hold the bonds and coupons as the terms of the trust deed provide.

The defendants averred that it had engaged counsel to collect the bonds held by it and was entitled to an allowance for solicitor's fees and had a right to participate in the proceeds of the sale of the property and appropriate prayers for relief to that end were made. Later by an order of court Thomas E. Garvin, as receiver of the Meyer-Kiser Bank, was substituted as defendant in place of Kiser, Cohn and Meyer, defendants, as liquidating agent of the Bank.

Thomas E. Garvin, as Receiver of the Bank, interposed an answer on August 15th, by permission of the court. That answer sets up practically the same defense as that set out in the answer of the Bank and Liquidating Agents of the Bank. The Receiver's answer contained an allegation that the instrument executed by Kiser and Meyer of one part and Kotte and wife of the other part whereby Kiser and Meyer resigned as trustees and Greve and Fox were designated as successor trustees was not dated at the time of its execution, but the date was inserted just prior to the filing of the bill of complaint.

The defense presented by the averments in the defendant's answer is that Meyer-Kiser Bank had acquired the bonds issued by Kotte and sold them to the Meyer-Kiser Corporation, which in turn had sold them to the Prudence Company in New York, but that the Meyer-Kiser Bank, at which institution the bonds were payable, had caused the Chase National Bank of New York to pay the bonds as they matured and were presented at that Bank by the Prudence Company. That arrangement was made to facilitate

the sale of the bonds to the Prudence Company; that as the bonds were paid at the Chase National Bank the amount paid was charged to the Meyer-Kiser Bank and the bonds and coupons uncancelled were returned to the Meyer-Kiser Bank. The bonds were payable at the last named Bank, and of course were to be paid from funds supplied by the mortgagor.

To facilitate the transaction between the Meyer-Kiser Corporation and the Prudence Company it was agreed that trustees in New York should be substituted for the original trustees named in the mortgage, but as the Meyer-Kiser Bank was to supply the funds with which the Chase National Bank was to pay the bonds and coupons on presentation to that Bank and the possibility always existing that the mortgagor would fail to provide the funds to discharge the indebtedness by depositing the money in the Meyer-Kiser Bank necessary to that purpose, in which case the Meyer-Kiser Bank under its agreement with the Prudence Company that the Chase National Bank would pay the bonds on presentation, would be required to make such payments, it was agreed that the New York trustees, Fox and Greve, should not exercise the powers of trustees immediately, that the appointment of them should not take immediate effect, that the instrument was not to be recorded as the trust deed required, and the resignation of Meyer and Kiser and the appointment of Fox and Greve should not take effect until the parties concerned, that is to say, the Meyer-Kiser Bank and the Prudence Company could determine whether, in the event the mortgagor should fail to provide the funds necessary to pay the bonds and coupons and the Meyer-Kiser Bank would be compelled under its agreement with the Prudence Company to pay the same or a large part of them, the joint interest of the Prudence Company

and the Meyer-Kiser Bank would be best subserved by the appointment of new trustees or the retention of the old.

It was also averred that the agreement to substitute trustees was undated for the above reason and was to be dated and recorded only when the parties concerned should agree that the new trustees, Fox and Greve, should act as such, but in violation of such agreement the Prudence Company and Fox and Greve inserted the date in the written agreement as of February 6, 1926, a short time before the filing of the bill of complaint and without exercising the option to substitute Fox and Greve as trustees.

The Bank contends that while some of the bonds were paid there remained in its possession unpaid bonds to the amount of $22,500 which it owns, the payment of which is secured by the mortgage, and that whoever may be the persons rightfully entitled to bring the suit the proceeds of the sale of property should be apportioned between all the bondholders and the allowance for attorney's fees should likewise be apportioned between the Prudence Company and the Meyer-Kiser Bank, owner of the remaining $22,500 of the bonds.

The parties went to a final hearing on that defense and after taking of the evidence the Chancellor held the equities to be with the complainants and ordered the property sold. While the decree does not expressly hold the defense to be without merit or evidence to support it, it does so inferentially by foreclosing the right of redemption which might be held by any of the defendants and failing to provide for a distribution of the proceeds of sale between all the holders of bonds. The decree holds that the amount due on account of the bonds is only $26,080 with interest and takes no account of the $22,500 averred to be due to the Bank on account of bonds averred to be held by it.

From that decree an appeal was taken to this Court.

The original bill made the Meyer-Kiser Bank of Indianapolis a party defendant. An amendment to the bill made E. P. Duncan, as Liquidator of Meyer-Kiser Bank, a defendant. A still later amendment omitted Duncan as Liquidator and added the names of J. J. Kiser, M. S. Cohn and Fred F. Meyer as Liquidators of the Meyer-Kiser Bank as defendants. Those defendants answered and set up as the defense stated to which the complainant replied and alleged that the bonds described in the answer of the defendants were paid by some of the defendants in the suit. Thomas E. Garvin then moved the court to substitute him as Receiver of the Meyer-Kiser Bank as a defendant in place of Kiser, Cohn and Meyer as Liquidating Agents of the Bank. An appropriate order was made on that motion substituting Garvin as Receiver in place of the liquidating agents as defendant. The Bank was not eliminated as a defendant, but through the proceedings and in the decree the name of the Bank appeared as a defendant and by the decree it was barred and foreclosed of all its right, title, interest and equity of redemption.

Garvin as Receiver interposed for the Bank as stated the same defense which the liquidating agents had interposed. That proceeding cannot be said to be an intervention by Garvin in the sense that it was in subordination and recognition of the propriety of the main proceeding. As Receiver of the Bank Garvin had the right to attack the propriety of the suit by Fox and Greve as Trustees for the Bank of which he was the Receiver. The Bank could have done so with propriety and entirely within its rights. Why could not the Receiver who succeeded to those rights do the same?

The attack, however, made by the Receiver upon the

propriety of the suit failed not only because in the pleadings there is a lack of clearness in averments as to the participation by the Bank in the averred understanding orally made that the appointment of Fox and Greve as successor trustees should not be immediately acted upon, but should not be operative until a later date when Fox and Greve should exercise an option to have themselves substituted as such trustees. In any event, Fox and Greve exercised the option when they undertook as trustees to bring the suit to foreclose the mortgage.

The defense undertaken on that point was not supported by such clearness in the proof that this Court can say that the Chancellor's finding against the existence of such an understanding was clearly erroneous.

Following a long line of decisions by this Court to the effect that the Chancellor's findings of fact will not be disturbed unless it is shown that they are clearly erroneous, we are compelled to hold that the decree was correct insofar as the right of the complainants to maintain the suit is involved under the averred oral agreement. See Dixon Lumber Co. v. Jennings, 63 Fla. 405, 57 South. Rep. 615; Barnes & Jessup Co. v. Williams, 64 Fla. 190, 60 South. Rep. 787; McGill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; City of Marianna v. Daniel, 74 Fla. 103, 76 South. Rep. 692; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Brickell v. Town of Fort Lauderdale, 75 Fla. 622, 78 South. Rep. 681.

Where there is irreconcilable conflict in the testimony on which a decree is based, but there is substantial evidence to support the decree it will not be reversed. Rosenthal v. First Nat. Fire Ins. Co. of United States, 74 Fla. 371, 77 South. Rep. 92; Wimbish v. Douglass, 92 Fla. 224, 109 South. Rep. 306.

As to the point that the appointment of the successor trustee was not completed and was of no effect because the instrument in writing containing the appointment was not recorded as the terms of the trust deed required, it is sufficient to say that neither the answer of the Bank or of the Receiver presents the matter as a defense against the maintenance of the bill. The trust deed requires that a copy of the written instrument shall be "filed for record in the office of the Recorder of Dade County, Florida." There is no provision of law except Chapter 11989, Acts 1927, permitting a copy of an instrument in writing affecting the title to real estate to be recorded, and as the purpose of causing the instrument to be filed was stated to be for the record of it the provision was of no effect. Moreover, the Meyer-Kiser Bank executed an instrument in writing ratifying and confirming the resignation of Meyer and Kiser as trustees and for a valuable consideration by the same written instrument appointed Fox and Greve as successor trustees.

The consideration of the averments of the answer and the testimony in the case lead us to the conclusion that the attack upon the authority of the complainants to maintain the suit should fail not only because of insufficient averments and weakness of evidence as to the averred oral understanding that the appointment of the successor trustees should not be immediately effective, but also for the reason that it does not sufficiently appear that the purpose which such alleged deferred action was to serve was ever made necessary by the completion of the Meyer-Kiser Bank's agreement with the Prudence Company to have all the bonds held by that company paid as the same came due on presentation at the Chase National Bank.

The contention made by the Meyer-Kiser Bank that the

bonds, or some of them which were paid at the Chase National Bank and returned to the Meyer-Kiser Bank uncancelled, became the property of the Meyer-Kiser Bank were outstanding and unpaid obligations of the mortgagor to be enforced against the mortgaged premises as liens of equal dignity with those still in the hands of the Prudence Company which had purchased all the bonds from the Bank or its transferee, the Meyer-Kiser Company, is without any basis to support it.

The Prudence Company became the purchaser of the entire issue from the Meyer-Kiser Company with the understanding that the Meyer-Kiser Bank would cause the bonds to be paid as they matured by the Chase National Bank. The inducement to purchase the entire issue doubtless offered to the Prudence Company was that the Meyer-Kiser Bank would cause the bonds as they matured to be paid at the Chase National Bank on presentation. As each bond or block of bonds matured and were paid the original security rendered the remaining unpaid bonds more certain of payment in the event of a later default.

To assert that the bonds as paid at the Chase National Bank were not extinguished as paid so far as the Prudence Company or its assigns were interested but continued in existence in the hands of the Meyer-Kiser Bank as the evidence of debt against the mortgagor and entitled to share in the original security on an equality with the unpaid bonds still in the hands of the Prudence Company or its assigns would be to write a new contract for the parties in the sale of the bond issue by the Meyer-Kiser Company to the Prudence Company.

No evidence of any such agreement exists in the record and no averment of any such agreement exists in the pleadings. The fact that the Meyer-Kiser Bank instructed the

Chase National Bank to pay the bonds and charge the same to the Meyer-Kiser Bank and then return them to that Bank uncancelled was not binding upon the Prudence Company to the extent that it established an agreement between that company and the Meyer-Kiser Bank that the latter should hold the bonds so paid at the Chase National Bank as bonds of equal dignity with the remaining unpaid bonds held by the Prudence Company. On this question therefore the Chancellor's decree was correct.

The final decree should have provided, however, that the Meyer-Kiser Bank of Indianapolis is entitled to share in the proceeds of the sale of the mortgaged premises to the amount of the bonds held by it and interest thereon and reasonable solicitor's fees paid or agreed to be paid by it in this proceeding after the payment from such proceeds of the amount found to be due to the complainant Trustees, Fox and Greve, the costs of the proceeding and the Master's fees for making the sale, also the sum of fifteen hundred dollars for solicitor's fees for the complainants and taxes on the property that may be due and unpaid; that the lien held by the Meyer-Kiser Bank is secondary to that of the complainants in the sense that as between them and the complainant Trustees and the Meyer-Kiser Bank the complainant Trustees have a superior right to the satisfaction of the claim set forth in the bill from the proceeds of the sale of the property over the claim of the Meyer-Kiser Bank.

It is ordered that the decree be modified as above directed and in all other respects with such modification it is hereby affirmed.

Davis, C. J., and Terrell, J., concur.

Whitfield, P. J., and Brown and Buford, J. J., concur in the opinion and judgment.

## ON REHEARING

PER CURIAM.—On petition for rehearing the Court has concluded to strike from its opinion all that paragraph beginning with the words: "The final decree" and ending with the words: "claim of the Meyér-Kiser Bank," and to strike also the following paragraph, constituting the order, as follows: "It is ordered that the decree be modified as above directed and in all other respects with such modification it is hereby affirmed."

In place of the above described portions of the opinion and order, the following is substituted and made the order of the Court, to-wit:

"We find no error in the decree, so it is affirmed."

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.