MARY BRICKELL, *Appellant*, v. TOWN OF FORT LAUDER-DALE, *Appellee*.

Opinion Filed April 26, 1918.

1. The findings of the chancellor on the evidence, will not be disturbed unless such findings are clearly shown to be erroneous.

2. On the facts in this case it is held that the dedication of the streets extends to the waters of New River.

3. Where a dedication to the public use is made of a street or roadway, and the same is used by the public, it is the duty of the city as trustee of the public rights in and to the streets within whose corporate limits they are, to maintain the public uses against encroachments, and this applies to territory taken into the corporate limits after the dedication as well as to territory included in the corporate limits at the time of the dedication.

Appeal from the Circuit Court of Broward County, H. Pierre Browning, Judge.

Decree affirmed.

*McCaskill & McCaskill* and *E. O. Locke*, for Appellant;

*J. F. Bunn*, for Appellee.

BROWNE, C. J.—The suit brought in the Circuit Court for Broward County by the city of Fort Lauderdale the appellee herein, against Mary Brickell,, is in effect an action to enjoin the defendant below from obstructing North and South River Streets in the city of Fort Lauderdale by erecting buildings, providing wharves, docks,. boat ways and other obstructions on such parts of those streets as are contiguous to and bordered by the waters of New River, a navigable stream which extends' through a part of the city.

On the 20th of April, 1896, Mary Brickell and William B. Bickell her husband owned certain lands on which they laid out a town site, subdivided into blocks or lots with streets and avenues, and caused the subdivision to be platted. The plat was duly recorded in the records of Dade county, and contained this inscription : "Know all men by these presents that, we, William B. Brickell and Mary Brickell, his wife, have caused to be made the following attached map of the subdivision of the South half of the South half of Section 3 and the North half of the North half of the South half of Section 10, in Township 50 South, Range 42 East, in Dade County, State of Florida, to be known as Fort Lauderdale; and that we do hereby deidcate to the perpetual use of the public, the streets or highways shown thereon, reserving to ourselves, our heirs, personal representatives, successors or assigns, owning lands abutting or adjoining the same, the reversion or reversions thereof whenever discontinued by law."

A demurrer to the bill was overruled and the defendant filed her answer. Testimony was taken on behalf of both parties. and the chancellor in. his final decree held, that William B. Brickell and Mary Brickell were owners in fee simple of the land platted as the town of Fort Lauder-

dale, and that they dedicated to the perpetual use of the public the streets and highways shown thereon, and that they confirmed such dedicating by making deeds of conveyance to land described therein by reference to such plat, and that by virtue of such dedication there was vested in the public an easement into and over the streets and highways, and that North River Street as shown on the plat is not of uniform width and that its south or southerly boundary is the waters of New River; and that South River Street as shown on the plat is not of uniform width and its north or northerly boundary is the waters of New River, that the fee in the land over which North and South River Streets are laid out and dedicated is vested in Mary Brickell or her heirs, personal representatives, successors or assigns, subject to the easements aforesaid, and that "the owners of the fee and the public have a coexistent right, the owner to use the land and the public to use the street and one does not destroy the other. The owners right to use the land is limited to such purposes as do not interrupt or interfere with the free use by the public for all proper and lawful street purposes," and "that the town of Fort Lauderdale has the right through its proper officers and agents to regulate, improve, maintain and control said streets and highways for the use of the public, for all proper lawful street and highway purposes;" and enjoined the defendant Mary Brickell from doing or attempting to do any act, thing or deed that would in any wise interrupt or interfere with the town of Fort Lauderdale in exercising its lawful power and right to regulate, improve, maintain and control the streets and highways aforesaid, to-wit, North River Street and South River Street as construed to be shown on said plat of the town of Fort Lauderdale,

and that "all other matters and things in and by complainants bill of complaint prayed are hereby denied."

Upon the entry of appeal by the defendant, the complainant filed cross assignments of error, to the effect that, the final decree is ambiguous in that it does not clearly and specifically find and decide whether the riparian rights pertaining to the banks of New River at the points in question were an incident of or appurtenant to the public easement, or whether they were an incident of or appurtenant to the legal title or fee of the respondent.

There are four assignments of error by appellant, the first based on the overruling of the defendant's demurrer, and the second, third and fourth present the same propositions of law and are discussed together by appellant and will be so treated by this court.

In the discussion of the first assignment the appellant covers several propositions not raised by the demurrer and will not be discussed by us. Neither is it necessary for us to discuss those grounds of the demurrer which are contended for by appellant, as the bill contains equity, and is sufficient to support the decree of the chancellor upon the issues presented by the pleadings and testimony, and we find no error in the order of the chancellor overruling the demurrer.

The vital questions presented by the assignments of appellant and cross assignments of appellee, are whether North and South River streets have a river boundary, and if so, do the riaprian rights in such streets accrue to the public, or are they reserved to the owner of the fee in the streets?

It is not questioned that there was an express dedication of the streets and highways shown on the plat, but appellant contends that the plat, is ambiguous with reference to the width of North and South River Streets.

40—Vol. 75.

The meandering line of New River through the town of Fort Lauderdale is something over a mile, and at two points on South River street as dedicated on the plat the figure 40 appears, and appellant contends that because of these figures there is an ambiguity in the plat as to the width of both South River Street and North River Street, and that she should be permitted to offer extrinsic evidence of the intention of the dedicators. This she was permitted to do, and the chancellor after hearing all the testimony and considering the same in connection with the plat and the dedication, found that both North River Street and South River Street were bounded by the waters of New River.

This court is committed to the doctrine that the findings of the chancellor on the evidence will not be disturbed unless such findings of fact are clearly shown to be erroneous. Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97; City of Jacksonville v. Huff, 30 Fla. 8, 21 South. Rep. 774; Sarasota Ice, Fish & Power Co. v. Lyle & Co., 58 Fla. 517, 50 South. Rep. 993; McMillan v. Warren, 59 Fla. 578, 52 South. Rep. 825; Viser v. Willard, 60 Fla. 395, 53 South. Rep. 501; Dixon Lumber Co. v. Jennings, 63 Fla. 405, 57 South. Rep. 615; Barnes & Jessup Co. v. Williams, 64 Fla. 190, 60 South. Rep. 787; Baggatt v. Otis, 65 Fla. 447, 62 South. Rep. 362; Guerra v. Guiterrez, 66 Fla. 570, 64 South. Rep. 232; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Simpson, Trustee v. First National Bank of Pensacola, and O'Brien v. Smith, decided at the June, 1917, term of the court.

There is ample testimony to support the findings of the chancellor that the southerly boundary of North River Street, and the northerly boundary of South River Street were intended to be the waters of New River.

It is contended by the appellant that she intended

North River Street and South River Street each to be only forty feet wide. The plat is drawn to a scale. There are some streets forty and some fifty feet wide, and others of less width. Measured by the scale to which the plat is drawn, the width of North and South River Streets as shown by the plat is generally about forty feet, but it apparently varies according to the meanderings of the river. The lines marking the side of the North and South River Streets, away from the river, are all straight lines, while those which mark the side next to the river are undulating and apparently follow the contour of the river. A single undulating line is usually used for marking a water boundary not affected by tides, while several parallel waved lines are used to mark a water boundary where tides ebb and flow; and where these are found on a plat, they should be taken to define a lot or street lying on the water, with nothing between it and the water, in the absence of anything appearing to the contrary on the plat, or in the dedication. See St. Paul & P. R. Co. v. Schurmier, 7 Wall. 272; Sizor v. Logansport, 151 Ind. 626; 44 L. R. A. 814.

It was proven on the trial that the appellant had given several warranty deeds which contained the words, "with all riparian rights and privileges." These were conveyances to lots which abutted on the side of North River Street or South River Street, farthest from the river. It has sometimes been held that where a lot is separated from navigable waters by a public roadway, the riparian right to the part of the waters lying in front of his lot, is in such lot owner, and the grantor may have had this in mind when she granted the riparian rights to upland lots which were separated from the river only by a street whose boundary was the river, for clearly if there had been a strip of land between the street and the river, as

now contended by appellant, the riparian right attached to that. The acts of the dedicator in granting riparian rights to owners of lots lying on the side of the street furthest from the river, is repugnant to her present contention that she retained a strip of land between these streets and the river.

There is intrinsic evidence in the plat itself, from which the true intention of the appellant at the time she made the dedication can almost conclusively be established—at least, more certainly than the testimony of witnesses given after a lapse of nearly twenty years, subject as such testimony is to mistakes caused by defective memory, personal interest however slight, and the confusion of after-acquired information or later impressions, with memory. The Town of Fort Lauderdale as laid out by Mary Brickell and William Brickell was a mile square, and New River ran almost through the center of the plat. The cross streets that ran towards the river and into North and South River Streets show an opening where they enter the side of these streets away from the river causing a break in that line of the street, but the line of the streets on the river is continuous. If, as contended by appellant there was a strip of land between the river and the South line of North River Street, and the North line of South River Street the cross streets would doubtless have been shown on the plat as extending across this strip to the River. The cross streets on both sides of the river bear the same names, are of the same width, and are on the same line; showing an intention to make them continuous streets extending from one side of the town across the river to and through the other side of the town. If there was reserved to the appellant a strip of land on the river side of North River Street and South River Street, the inhabitants of one side of the city were entirely

cut off from intercourse with the other, for there is no point shown on the plat where ingress and egress to and from the river was possible without permission from the owner, or by becoming a trespasser. It is so highly improbable that a party owning a large tract of wild land whereon she was desirous of founding a town, would locate it on both sides of a river, and by reserving to herself a strip along both banks between the street and the river, bar for all time the inhabitants of half the town from communicating with the other half, except upon permission from her, that the proof to establish such a contention ought to be of the strongest character. It has been repeatedly held that where a town is laid out upon the bank of a navigable river, that even in the absence of an express dedication of the streets, it is sufficient evidence of its extending to the water, unless a contrary intention is manifestly indicated, and some courts have intimated that even where a map shows a strip of land between the river and the line of the street nearest the river, that in the absence of anything to the contrary, it would be presumed that the space between such line and the river was thus discriminated for the use of the town, if not for a street. See Webb v. City of Demopolis, 95 Ala. 116, 13 South. Rep. 289; Village of Brooklyn v. Smith, 104 Ill. 429; Davies v. Epstein, 77 Ark. 221, 92 S. W. Rep. 19. Thus in the case of Rowan's Executors v. Town of Portland, 8 B. Monroe (Ky.) 232, the map showed a strip of land lying between the river and the line of the street nearest the river and the court said: "That the town extended to the Ohio river, leaving no space between the town and the water, is a position which, in our opinion, does not admit of question. There is no line dividing or separating the town from the river. And if there were, it should rather be presumed that the space

between such line and the river, was thus discriminated for the purpose of showing that it was intended for some use of the town different from that of the ordinary streets and public grounds, (or that the cross-streets at least, were intended to be extended to the river at some future day), than that a town located upon the bank of such a river, and at a point selected for its commercial advantages, should be wholly shut out from free and common access to the river. The unreasonableness of this latter presumption has been more than once declared by this Court, and the fact that a town is laid off upon the bank of a navigable river, has been held to be sufficient evidence of its extending to the water, unless a contrary intention is manifestly indicated. And we say it extends to, and is bounded by the river, not only because this is to be presumed from its location on the bank, but because there is no other northern boundary but the river. A location on the river has been held to be sufficient evidence that the town so located, extends to the water, in the cases of the Trustees of Maysville v. Boone, 2 J. J. Marshall, (Ky.) 224; Giltner v. Trustees of Carrollton, 7 B. Monroe (Ky.) 680; City of Louisville v. Bank of United States, 3 B. Monroe (Ky.) 144.

In the case of City of Louisville v. Bank of United States, *supra,* the court said: "It would be almost as reasonable to sell and appropriate as private property the river itself, as the ground lining its margin, the occulsion of which would obstruct the communication between the. city and the river. The object of locating a town on the river, was to enjoy the benefit of its facilities as a highway." This reasoning applies with even greater force to a situation such as exists in the instant case, where the river flows through the town and cuts it into two parts.

In Haight v. City of Keokuk, 4 Iowa 199, the court

said: "The same reasoning applies to Water street. No other reasoning than the foregoing will answer; for it is impossible to suppose that the proprietors, in laying off a commercial town upon a great navigable river, intended to cut off from free access to that river, all but those who owned the front lots, and thus take away that which constitutes the greatest value of them all. What makes the land of this town of more value than a common farm? It is its adaption to commerce and trade, through its accessibility to a large navigable stream, and thence its communication with the rest of the world."

Whatever ambiguity may have been caused by the insertion of the figures 40 on two places on the plat of South River Street, no such ambiguity can be claimed as to the width of North River Street. The appellant, however, says "At the extreme East end of South River Street we find '40' and in South River Street, between Cunningham and Metcalf avenues, '40' which the engineering and legal professions both take to mean 40 feet, and it would give rise to the construction that North River Street and South River Street are only 40 feet wide."

We cannot follow this method of ratiocination and apply a conclusion reached in determining the intention of a dedicator where an ambiguity exists, to that part of an express dedication where there is no ambiguity. It would be more logical to apply the facts of the latter situation, to that part of the plat which needs explanation. Thus, as there was no ambiguity in the plat as to the width of North River Street,—it being perfectly clear from the plat and the dedication that it extended to the waters of New River,—the logical conclusion would be that it was the intention to have the same condition exist in South River Street, otherwise there would have been this situation; the public residing on the North side of Fort Lauderdale

would have access to the river, and could cross over it to that part of the city which lay South of the river, but they would not land without becoming trespassers. Those living on the South side of the river having no access to the river, would have to stay on their side.

The plat shows a street on each side of the river by a single line denoting the line between the river and the street on each side of the river, with nothing to indicate that the street on each side was not intended to extend to the waters of the river. The sides of the streets furtherest from the river are denoted by straight lines while the sides of the streets next to the river are marked by irregular lines presumably indicating the irregular lines of the waters of the river.

The courts have frequently said, and we find the same expressions in the text-books that it is "inconceivable" and "preposterous" to contend that a town would be located on the banks of a navigable river, and the inhabitants deprived of the right of access to the river. The unreasonablenes of this contention is more pronounced in this case than any which we have been able to find, for here we have the owners of land laying off a city through which runs a navigable stream, a natural highway, now claiming that they intended to so isolate the inhabitants on each side of the river, that they could not have intercourse with those on the other side, or have access to the natural highway which flows through the city, without becoming trespassers or first getting permission from the owners of the strip reserved on the banks of the river.

We do not say that the owner of land desiring to lay off a city, through which flows a navigable river, might not do this, and in effect erect a barrier on each bank of the stream and cut off intercourse between the two sec-

tions of the city, but the unreasonableness of such a plan for a city, and the improbability of one so situated becoming populated, is so great, that such intention on the part of the dedicators would have to be very clearly established before it should be accepted by the courts, and where there is any doubt as to such intention it should be resolved against it. As was well said in the case of City of Denver v. Clements, 3 Colo. 484, "If there exist an *actual* intent to reserve any portion of the lands so platted into streets, otherwise than by express reservation on the plat, certainly it should be made manifest in some manner not only of equal certainty, but of equal publicity as the plat, otherwise an *actual intent* cannot be permitted to avail against an intent on which the law will and must insist, as being shown by unequivocal acts upon which the public had a right to rely." See also City of Indianapolis v. Kingsbury, 101 Ind. 200.

This disposes of the question of the width of North and South River Streets which the chancellor found extended to the navigable waters of New River, which finding is approved.

Where a dedication to the public use is made of a street or roadway, and the same is used by the public, it is the duty of the city as trustee of the public rights in and to the streets within whose corporate limits they are, to maintain the public uses against encroachments, and this applies to territory taken into the corporate limits after the dedication as well as to territory included in the corporate limits at the time of the dedication.

The decree is affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.