Ocean Navigation Co., et al., v. Town of Palm Beach.

152 So. 853.

Opinion Filed February 21, 1934.

*E. M. Baynes, Kearley & Fisher* and *A. Melrose Lamar*, for Appellants;

*E. Harris Drew* and *Richard P. Robbins,* for Appellee.

WHITFIELD, J.—This appeal is from an order denying motions to dismiss for insufficiency as a pleading, a bill of complaint which seeks to have adjudicated as a dedication

to public use, a strip of land on the ocean front between a twenty-two foot "Reservation," which has been expressly dedicated by defined boundaries, and the waters of the ocean to the east, in a subdivision called Villa Marine in the Town of Palm Beach, Florida, as shown by a designated plat.

A recorded plat of Villa Marine, dated December 2, 1912, and made a part ,of the bill of complaint, shows that Villa Marine consists of Blocks 1, 2, and 3, subdivided into lots with "First Street" running east and west between Blocks 1 and 2, and "Second Street" running east and west between Blocks 2 and 3. "Third Street" is south of Block 3, and "Royal Park" is north of Block 1. East of the three blocks in Villa Marine is a forty-foot street running north and south, marked "Ocean Boulevard"; and east of "Ocean Boulevard is a twenty-two foot strip extending north and south which is marked "Reservation." Between the East line of the twenty-two foot "Reservation" and a line further east indicating "ocean" is a strip of land apparently more than fifty feet wide on which there appears no inscription, the word "ocean" being on the east side of the line that is farthest east apparently representing the water line.

It is contended that in dedicating to the public use the streets and the strip marked "Reservation," and in conveyances of lots by reference to the plat and in permitting the use of the beach strip by the town and by the public, the dedicator grantors manifested an intent to also dedicate to the public use, the space between the east line of the twenty-two foot strip marked "Reservation" and the ocean, such space being the subject of this. suit.

It is alleged that at the time of the dedication by plat the dedicators "were the owners in fee simple of all of said lands lying east of the Ocean Boulevard and to the high water mark of the Atlantic Ocean, and that said plat pur-

ported to cover said lands, and did in fact include the same."
It is not alleged that any land east of the "Reservation"
was dedicated by the inscriptions on the plat or by a sub-
sequent deed dedicating the twenty-two foot strip marked
"Reservation," or by the contents of any deed conveying
lots in Villa Marine with reference to the recorded plat,
except an easement or right-of-way to the ocean beach at
the east end of First and Second Streets.

The dedication inscription on the recorded plat of "Villa
Marine" is that the owners of the land "have caused the
attached plat to be made and land subdivided as indicated
on this plat, and hereby dedicate the streets as shown hereon,
to the perpetual use of the public." The plat was recorded
May 9, 1913.

It is alleged that subsequent to the execution and record-
ing of the plat, deeds conveying lots with reference to the
plat of Villa Marine contain the following:

"It is further agreed that the grantor shall give an ease-
ment or right-of-way to the ocean beach at the east end of
First and Second Streets, as described in above plat. It is
further agreed that there shall be no buildings or structures
of any kind erected, or business carried on, east of the
Ocean Boulevard, described in the above plat."

A deed executed March 16, 1916, dedicates "to the per-
petual use of the public for park purposes, that certain strip
of land twenty-two feet in width, bounded on the North
by the North line of Lot 2 in Block One, Villa Marine; on
the South, by the South line of Villa Marine; on the West,
by the East line of the Ocean Boulevard; on the East by a
line twenty-two feet distant from, and parallel with the
East line of the Ocean Boulevard, provided that no building
shall ever be erected on said strip of land, and provided
further, that said strip of land shall never be used for

commercial purposes; and provided further, that this dedication is made subject to the easement, or right-of-way heretofore granted purchasers of lots in Villa Marine over those portions of said twenty-two foot strip, situated directly East of First and Second Streets, as shown on said plat."

It thus appears from the allegations that the recorded plat of Villa Marine dedicated only "the streets as shown" on the plat; that the deeds conveying lots by the plat provided that "the grantor shall give an easement or right-of-way to the ocean beach at the east end of First and Second Streets as described in above plat," and "that there shall be no buildings or structures of any kind erected or business carried on east of the Ocean Boulevard, described in the above plat"; and that in the subsequent deed dedicating the twenty-two foot "Reservation," it is provided that no building shall ever be erected or business carried on within the twenty-two foot "Reservation" and that said twenty-two foot "Reservation" shall never be used for commercial purposes, and that "this dedication is made subject to the easement or right-of-way heretofore granted to purchasers of lots in Villa Marine over those portions of said twenty-two foot strip, situated directly east of First and Second Streets, as shown on said plat."

Such allegations and exhibits severally and collectively show no dedication of land east of the twenty-two foot "Reservation"; but only easements or rights of way at the east end of First and Second Streets to the ocean beach, with a provision that no building or structure of any kind shall ever be erected or business carried on east of Ocean Boulevard which includes the twenty-two foot "Reservation" and strip thence to the ocean.

It is alleged that at the time of the execution of the plat of Villa Marine,

"There existed land between the eastern boundary of that certain strip of land shown on said plat, marked 'reservation,' and the Atlantic Ocean, which at said time and at all times subsequent thereto, and at the present time, was the beach of the Atlantic Ocean, along the easterly edge of the property owned by said H. F. Hammon and H. G. Wheeler, and platted as Villa Marine. That said beach, at the time of the dedication of said land, and all times subsequent thereto, and at the present time, has been subject to erosions and accretions by virtue of the actions of the elements, and particularly the washing away of said shore and the building up of said shore by the Atlantic Ocean; that during the West Indies hurricane of September, 1928, practically all of said beach was washed away, and that at the time of the filing of said plat, and all times subsequent thereto, and at the present time, said land lying east of the said strip marked 'reservation,' and between it and the waters of the Atlantic Ocean, has been devoid of vegetation, and consisted of beach sand, constantly moving and changing by virtue of the elements."

Such allegations indicate that there was land east of the twenty-two foot "Reservation," which was the "beach" of the Atlantic Ocean; but the allegations do not amount to a statement that the east line of the twenty-two foot "Reservation" extended to the ordinary high-water mark of the ocean. As the dedication of the twenty-two foot "Reservation" expressly and definitely defined its eastern boundary to be "a line twenty-two feet distant from, and parallel with the east line of the Ocean Boulevard," if such east line of the twenty-two foot "Reservation" did not at the time of the dedication extend to ordinary high-water mark of the ocean, the intervening land between the twenty-two foot "Reservation" and the ordinary high-water mark of the

ocean was not dedicated by the dedication of the "Reservation," and such land, if it existed, remained the property of the dedicators, with the consequence that the owners did not lose their property rights by reason of erosion and accretions caused by the action of ocean waves or otherwise; and the mere absence of vegetation on the land does not affect property rights.

The bill of complaint contains allegations that the complainant town "has through its proper officers and agents regulated, improved, maintained, and controlled said lands, being the beach of the Atlantic Ocean between the strip of land marked 'reservation' on said plat and the Atlantic Ocean, at all times subsequent to the date of the recording of said plat; that it has constructed on said beach, for the preservation thereof and for the maintenance and continued use of the same for beach and park purposes, certain groynes, at great expense to your complainant, and has at all times subsequent to the recording of said plat preserved and maintained said lands for public park and bathing purposes. That the public has enjoyed the free and uninterrupted use of said tract of land for public park and bathing purposes at all times subsequent to the date of the recording and execution of said plat, and have not been molested or interfered with in the use and enjoyment of the same from the year A. D. 1913 until the year A. D. 1930, as hereinafter alleged; that the complainant has during all of said times policed said tract of land and through its proper officers, as aforesaid, has regulated, improved and maintained the same for the use and benefit of the public, and for all proper public park and bathing purposes"; that complainant town "has regulated, improved, maintained and controlled said strip of land marked 'reservation' from the date of the recording of the instrument marked 'Complain-

ant's Exhibit 2' and made a part hereof, and has in regulating, improving and controlling said strip of land constructed bulkheads adjacent thereto, at great cost to your complainant, and planted trees and shrubbery thereon, and otherwise maintained and improved the same since the date of the recording of said instrument aforesaid."

Such allegations do not show a dedication or an abandonment of, or a recognition of public rights in, land east of the twenty-two foot "Reservation." The land dedicated as streets and as a twenty-two foot "Reservation" are clearly marked on the plat, and the deed dedicating the twenty-two foot "Reservation" specifically limits the eastern line of the twenty-two foot "Reservation" to "a line twenty-two feet distant from, and parallel with, the east line of the Ocean Boulevard.

There is no allegation that such eastern line of the "Reservation" reaches high water mark of the ocean, but the plat, presumably drawn to scale, indicates that the waters of the ocean are more than fifty feet east of the east line of the "Reservation," and there is nothing to indicate that all of such space is below high water mark. It is alleged that such space is the beach of the ocean, but this does not definitely allege that mean or ordinary high water mark reaches the "Reservation."

In view of the definite boundaries of the "Reservation" as dedicated, and of the nature and location of the land that appears to be between the twenty-two foot "Reservation" and the waters of the ocean, the above allegations as to the uses made of such land by the town or by the public, and as to the absence of objection to such use by the alleged dedicators of the land and their privies in title, do not duly allege a dedication of the land or an abandonment of it by its owners, or an acquiescence in a permanent public use

so as to deprive the owners of any property rights they may have in the *locus in quo*. The complainant alleges that the dedicators owned to the high-water mark of the ocean. The mere fact that the land has not been taxed does not deprive its owners of legal rights therein.

Other allegations are: "that it was the manifest intention of the said H. F. Hammon and H. G. Wheeler, in filing said plat of Villa Marine, as hereinbefore alleged, to dedicate to the perpetual use of the public all of that land lying east of the twenty-two (22) foot strip aforesaid, appearing on said plat and marked 'reservation,' which was, as hereinbefore alleged, especially dedicated to the use of the public on March 16, A. D. 1916, and that during the lifetime of the said H. F. Hammon and H. G. Wheeler, and at all times subsequent to his death, and until the date as hereinabove alleged, the said Hiram F. Hammon and H. C. Wheeler, and after their respective deaths, their administrators, executors and trustees have deeded lands according to said plat and have acquiesced and consented in the use of all of said lands described herein by the public, for public bathing and park purposes, and have consented to the control, regulation and maintenance of the same by the complainant, Town of Palm Beach, for the use of the public."

While the last above quoted allegations as to acquiescence and consent in the use of the land in controversy for public purposes, and as to consent to the control, regulation and maintenance of the land by the town for the use of the public are rather abstract and general, being more in the nature of asserted conclusions than of definite statements of specific facts, and are not materially aided by other allegations, yet in view of the general grounds of the motion for dismissal of the bill of complaint, it cannot fairly be said that such allegations wholly fail to state an equity for

appropriate relief in a case of this nature, or that under the allegations as made, an implied dedication may not be shown by sufficient competent evidence in due course of procedure, the chancellor having authority to confine the evidence to issues duly made, and to permit amendments for the furtherance of justice. See Johns v. Bowden, 68 Fla. 32, 66 So. 155.

This suit is maintained by the municipality for the use of the public against those claiming title to the *locus in quo*. Brickell v. Town of Fort Lauderdale, 75 Fla. 622, 78 So. 681.

Affirmed.

DAVIS, C. J., and TERRELL and BUFORD, J. J., concur.