70 So.2d 314 (1954)
EARLE
v.
McCARTY et al.
Supreme Court of Florida. Division B.
February 2, 1954.
Jack Kehoe, Miami, and Louis Vernell, Miami Beach, for appellant.
Richard W. Ervin, Atty. Gen., and W.R. Culbreath, Special Asst. Atty., Miami, for trustees of the Internal Improvement Fund of Florida.
James H. Walden, Dania, for City of Dania.
T.D. Ellis, Jr., Ellis & Spencer and Stanley M. Beckerman, Hollywood, for Hollywood, Inc., a Florida Corporation.
Judson A. Samuels, Hollywood, for City of Hollywood, appellees.
THOMAS, Justice.
This is an appeal from the chancellor's order dismissing the second amended bill of complaint filed by the appellant against the Trustees of the Internal Improvement Fund, Hollywood, Inc., a corporation, and the cities of Dania and Hollywood. The appellant sued for himself and others who owned lots in Block 207 in Hollywood Central *315 Beach subdivision, a plat of which was recorded in 1924.
In the tract, subdivided by Home Seekers Realty Company, was Block 207 which extended along the Atlantic Ocean for three thousand and six hundred feet and consisted of seventy-two lots fifty feet wide and varying in depth from one hundred to one hundred fifty feet. The western boundary of the lots was a street designated "Beach Drive" and beyond the drive was an irregular strip of land, without designation, separating the street from the waters of New River Sound. In short the lots were bounded on the east by the ocean and on the west by the drive; between the drive and the sound was a narrow strip of land unnamed on the plat. We have used the past tense advisedly as will be seen when the facts alleged are digested.
We go now to the bill of complaint for the additional facts relied upon for relief.
Beach Drive which was "the only route of ingress and egress to and from each of said lots" was dedicated by the subdivider "to the perpetual use and benefit of the public", but was never opened or defined, and never accepted by formal act of the City of Hollywood; nor was it "accepted by user, by the public" or anyone else. Also, it was "wild and unimproved."
It was alleged that the strip of land between the street and the sound was also offered for dedication to the perpetual use and benefit of the public and that this piece of land was so small as to be of no "practical use or service" and was the result only of the subdivider's desire to make the boundary of the street a straight line. The bald statement that the narrow strip of land was also dedicated is made despite the lack of any designation on the plat and it is followed by an averment that the subdivider, in 1927, executed a deed conveying to the City of Hollywood the "streets, drives, boulevards, alleys, ways, walks, avenues and parkways" shown by the plat, to which we have already referred. We have held that an unlabeled space appearing on a plat "indicates a reservation rather than a dedication", City of Tarpon Springs v. Smith, 81 Fla. 479, 88 So. 613, 620, so the appellant's position is not sustained by the plat. And the deed gives him no support because the land unmarked cannot be brought within the description just quoted from that instrument.
The pleader on the bases of these averments then resorts to a principle of law he claims is pertinent, namely, that where a dedicated street is not accepted by act or user, or is abandoned, the title reverts to the abutting owners, and he asserts that he therefore owns the "drive" in front of his property "together with the narrow, meandering strip of land lying in the west thereof * * *." He links the charge that the street was not accepted with the charge that it was abandoned. This appears inconsistent because we cannot see how abandonment could occur unless it followed acceptance.
At this point in the analysis of the pleading we pause to say why we referred to the property in the past tense. All the lots involved in this suit have disappeared beneath the waters of the Atlantic Ocean, while accretion to the disputed land separating the street from the sound has given it sizeable proportions.
So appellant's reasoning as it is manifested in his bill now makes obvious the goal, or decree, toward which he is traveling. To become entitled to the accretion, he must extend his title to the property along water, making him an upland proprietor. His path in that direction is barred first by the street and next by the intervening strip. The former barrier has two aspects. Accepting for the moment the law he has stated he would be entitled to the land to the center of the drive. Once there he contends that the rest of the way is opened because the land on the other side of the street is not of sufficient size to be of "some practical use or service" which brings into play a rule that where a street is the border of property, its abandonment places the title of the whole street in the *316 abutting owner. On these premises and the one that the narrow strip was dedicated anyway he asserts that he brings his title to the water's edge.
Of course, this reasoning, with reference to the west half of the street and the intervening parcel, even taking no account of the later accretion, depends on the propositions that the land was dedicated or that it was not usable, or both. The words we have quoted last from the bill are indentical with the words found in Chapter 10275, Laws of Florida, Acts of 1925, Section 177.08 Florida Statutes 1953, and F.S.A., providing specifications for maps or plats, but even assuming this law has the efficacy claimed for it, this act was passed the year after the plat in this case was recorded. And we are unable to construe the plat or the deed, as it is described in the bill, or both together as constituting a dedication of the narrow strip.
Before we leave this phase of the case we are impelled to remark that the significance we place on the west boundary of the street is quite different from appellant's interpretation. As we have written, he considered the intervening land as resulting only from the wish of the dedicator to define that side of the street with a straight line. We think a straight line indicated a boundary not only of the street but also of the land west of it and that the subdivider would have used an undulating line had there been any intention to dedicate all land between the east boundary of the street and the water. Brickell v. Town of Ft. Lauderdale, 75 Fla. 622, 78 So. 681.
The plaintiff pinned his prayer for relief on the abandonment or non-acceptance of the street yet he represented that it was the only means of reaching his lots and the others in the block, a situation that is perfectly plain from an examination of the plat. In anticipation of this condition, the plaintiff prayed "that a straight strip of land 40 ft. wide, as near as practicable to the waters of New River Sound, [along the new location of the shore] be set aside and dedicated for the perpetual public use of the owners of said lots * * * as a means of ingress and egress * * * and that such meandering strip of land [similar to the one so frequently mentioned] lying to the west of said 40 ft. road right-of-way and to the east of the waters of New River Sound be dedicated to the perpetual use of the public and of said land owners * * *."
In summary, the plaintiff was attempting by judicial decree to move the block as well as the street and the intervening strip from its original position on the surface of the earth to a new one bounded on the east by the new shore caused by erosion and on the west by the new boundary of the sound caused by accretion.
We think the plaintiff was not entitled to the relief. The dedication of the `drive' by deed was accepted when the instrument itself was accepted. There was no charge either that anyone in authority revoked the dedication prior to acceptance, or that the deed was not received and recorded by someone fully authorized to act for the grantee-city. Even supposing that there was no physical manifestation of acceptance of whatever dedication may be implied from the plat, by improving the street, still it was plain from the record that the city had assumed dominion over it.
The allegation of abandonment should be construed with the allegation that the street was "wild and unimproved," for if that was the character of the street it follows that it was the character of the property inasmuch as the street was the only way to reach it. A city may not be considered to have abandoned a street because of failure to improve it where need for the improvement has not arisen. See Indian Rocks Beach South Shore, Inc. v. Ewell, Fla., 59 So.2d 647.
This brings us back to the thought expressed before that even were the plaintiff to succeed in proving there was no acceptance or that there was an abandonment, he could take only to the center of the street because we find no dedication of *317 the land separating the street from the water; and we discover no such unusual circumstances as would make the ruling in Brickell v. Town of Ft. Lauderdale, supra, and like cases govern this litigation to the end that a decision would be entered in appellant's favor with respect to the dedication of the unmarked strip of land.
Having concluded that the plaintiff could not extend his title to land bordering the sound, we see no need to discuss the validity of the deed from the Trustees of the Internal Improvement Fund. There is no reason to decide who owned the accretion if the appellant had no claim to it.
Affirmed.
ROBERTS, C.J., and HOBSON and DREW, JJ., concur.