503 So.2d 389 (1987)
Barry BONIFAY and the City of Pensacola, Appellants,
v.
Robert Edward GARNER, Appellee.
No. BM-126.
District Court of Appeal of Florida, First District.
February 19, 1987.
*390 John B. Carr of Carr & Barnes, Pensacola, for appellant/Barry Bonifay.
John W. Fleming, Asst. City Atty., Pensacola, for appellant/The City of Pensacola.
John P. Welch of Jones & Welch, Pensacola, for appellee.
PER CURIAM.
Barry Bonifay and the City of Pensacola appeal a final judgment, following remand, quieting title in Robert Garner to certain waterfront property in Pensacola, Florida. Finding error in the trial court's order, we reverse.
This case is one in a long series of cases involving title to a strip of land lying between a public street, Bayou Boulevard, and Bayou Texar. The property lies within the East Pensacola Heights Subdivision which was originally platted in 1893 and recorded in 1915. The subdivision map divided the property into blocks and lots with streets running through the subdivision. The map shows an undesignated strip of land lying along Bayou Texar and in front of the lots facing onto the water on the west side of the peninsular subdivision. *391 The strip's eastern boundary is marked by a solid line along the upland lots and by an undulating solid line along Bayou Texar. Block 70 contains 12 lots, bounded to the north by what is now Moreno Street and on the south by Blount Street. The rear of these lots backs onto lots at right angles to them. These rear lots face onto either Blount or Moreno Streets. Lots 2 through 11 of Block 70 face west onto the undesignated strip along Bayou Texar with no other street access shown on the plat.
At the time of recording, this strip consisted of at most a wagon trail along the water. Over the next several decades the road came into greater use and was paved by the county and named Bayou Boulevard. The subdivision map shows the streets running at right angles to this strip, such as Blount and Moreno Streets, as intersecting this strip, with no line drawn across their western terminus in the strip.
In 1982, Garner filed a quiet title action to several lots within Block 70. He claimed ownership in fee simple as to Lots 10, 11 and 12, and in trust for his son as to Lots 7, 8 and 9. Garner also claimed ownership of the portion of the strip of land fronting these lots but lying between Bayou Boulevard and the waters of Bayou Texar. Garner claimed title to the property through a chain of record title and by adverse possession. In the early stages of the action, the City of Pensacola, a defendant in the suit, entered a stipulation that its only interest in the property was a sewer easement across the waterfront property. Apparently there was no dispute over the City's easement in the right of way for Bayou Boulevard. Appellant Barry Bonifay intervened as a class representative for landowners in the subdivision, claiming a private easement across the waterfront property arising from the original plat of the subdivision.
The trial court initially entered judgment for Garner. On appeal, this court reversed as to Garner's claim to the waterfront property. Bonifay v. Garner, 445 So.2d 597 (Fla. 1st DCA 1984). On appeal, there was no dispute as to Garner's title to the lots themselves.[1] This court found the chain of title did not support Garner's claim to the property in the strip opposite the six lots. As to a claim of title by adverse possession under color of title, section 95.16, Florida Statutes, this court found a 1961 deed from Ruby Garner to appellee Robert Garner was insufficient to support a claim of adverse possession under color of title as to that portion of the waterfront strip lying opposite Lots 10, 11, and 12. However, the court found a question of fact remained as to whether a 1962 deed from Ruby Garner to her brother Jewel Lee and back to Mrs. Garner would support a claim to the property fronting Lots 7, 8, and 9. The case was remanded for further proceedings on that issue. Particularly, there was a question as to whether there was a good faith and honest belief in the title transferred in the 1962 deeds under the rule in Simpson v. Lindgren, 133 So.2d 439 (Fla. 3rd DCA 1961). 445 So.2d at 603.
Subsequent to the remand of this case, this court decided Bonifay v. Dickson, 459 So.2d 1089 (Fla. 1st DCA 1984) involving a separate action to quiet title to similar property in another portion of this waterfront strip along Bayou Boulevard. The court found no title based on either record title or adverse possession under color of title. However, this court held there was a public dedication of the waterfront strip along Bayou Boulevard, finding in the original plat an intention and offer to dedicate the strip and an acceptance by the local government's improvement and maintenance of the road over the years.[2] 459 So.2d at 1094.
*392 In Dickson, we made several other observations about the property along this strip. One observation was that the upland landowners may have retained ownership in fee simple to the waterfront property opposite their lots. This was under a theory that owners of land abutting a public road, dedicated by common law dedication and lying along a navigable body of water, retain fee ownership under the entire width of the dedicated road. Such landowners also obtain a fee interest in any accretions to the land under the road and along the waterway. However, the accretions also remain subject to the public easement, giving the public the right to use and enjoy the accretions along the water. We also commended our decision in Dickson to the trial court below on the assumption that the decision would have implications for future determinations of property rights in this property including this action.
At the subsequent hearing,[3] Willie Lorraine Lee testified as to her knowledge of a May 1, 1962 deed by which Ruby Garner transferred all of her interest in Lots 1 to 9 of Block 70 to Mrs. Lee and her late husband and Mrs. Garner's brother, Jewel Lee.[4] That deed described the nine lots by reference to the original 1893 subdivision map. That deed also expressly conveyed by a metes and bounds description the waterfront property lying across Bayou Boulevard and the improvements on that property.[5] The Lees intended to build on the waterfront property, but Mrs. Lee testified she was uncertain why Ruby Garner had transferred all of her considerable holdings in Block 70 just to achieve a transfer of the waterfront property to the Lees. The May 1, 1962 deed was recorded on May 3, 1962. However, on May 2, 1962, the Lees deeded back to Ruby Garner all of the property they had received from her the day before. This second deed was recorded on May 4, 1962. According to Mrs. Lee, they had changed their plans about building on the property. She admitted knowing little about the transaction and did not know exactly what, if any, property she and her husband received by the first deed. The Lees paid nothing to Ruby Garner for the May 1st deed nor did they receive anything from Mrs. Garner for the May 2nd deed. The documentary stamps on the face of the deeds reflect that minimal consideration was paid for the property in either deed. There was no testimony as to Ruby Garner's understanding or belief about what *393 property she held title to when she conveyed this property to the Lees or when she received it back from them.
The other testimony at the hearing involved testimony of various neighbors and other witnesses who testified to the Garner family's use and maintenance of the waterfront property.
The final order again quieted title in Robert Garner as to Lots 7, 8, 9, 10, 11 and 12, including the waterfront property. The court stated it had obtained on its own initiative two maps from Escambia County officials which were relied on by the trial judge in making his ruling.[6] The court found there was no evidence of bad faith in the 1962 deeds between Ruby Garner and the Lees. Further, all deeds in the chain of title conveyed riparian rights to the grantee. The court found the Garner's fencing of the disputed strip was sufficient dominion for purposes of adverse possession.[7]
Appellants raise several issues on appeal. First, they contend error in the trial court's reliance on maps which were not part of the record, and its failure to follow the correct procedure in taking judicial notice of these maps. We agree that the trial judge strayed from the statutory procedure in section 90.204, Florida Statutes (1985), when on his own initiative he sought out and relied on two maps which had not been made a part of the record. The court failed to give the parties notice of the intent to resort to these maps. The court did not afford the parties an opportunity to challenge them as permitted in section 90.204. We find it regrettable that the trial court took it upon itself to search for documents outside the record, as prepared by the parties, to support its conclusions.
We also note that the court relies on these maps to show record title to the property in the disputed strip, a conclusion this court previously held Garner's chain of title could not support. One of the maps shows the property lines of the subject lots extending across Bayou Boulevard and into the undesignated strip. Since these maps were improperly relied on by the trial court, they cannot support a conclusion that the lots do extend into the strip. Further, the trial court erred in concluding that the 1962 deeds between Ruby Garner and Jewel and Lorraine Lee, which referred to the 1961 conveyance of that portion of the strip fronting Lots 10, 11, and 12, was adequate to support record title.[8] This court previously concluded that the record title in this case, including this 1961 deed, would not support such a conclusion.
As to the issue of adverse possession under color of title, appellants argue the trial court misplaced the burden of showing a good faith belief in the title conveyed in the May, 1962 deeds between Ruby Garner and the Lees. The trial court found no showing of bad faith, as the testimony showed a business proposal that had fallen through. Adverse possession under color of title occurs "[w]hen the occupant, or those under whom he claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property ..." and remained in possession for seven years. § 95.16 Florida Statutes (1979). Such a claim generally depends on an instrument which professes to pass title but, due to some defect including lack of title in the grantor, fails to actually do so. 2 Fla. Jur.2d Adverse Possession § 7 (1977). Further, the instrument must be accepted in a good faith and honest belief by the grantee that it vests title to the property in the grantee. Simpson v. Lindgren, 133 So.2d 439 (Fla. 3rd DCA 1961). Adverse possession under color of title may not be had where title is accepted with *394 knowledge that it is invalid or that the grantor had no title in the property.
In the prior appeal, this court stated it is the good faith belief of Ruby Garner as to the May, 1962 deeds that must be considered as she is the grantee through whom appellant claimed adverse possession under color of title.[9] Here the only testimony concerned the Lees' beliefs as to the property they received by these deeds. There was no testimony as to Ruby Garner's belief as to what title she had when she conveyed this property to the Lees and what title she believed she received when the Lees conveyed the property back to her the very next day. The only evidence as to Mrs. Garner's belief is circumstantial. The deeds contain a property description of the waterfront property that appeared in none of the prior deeds. The deeds transferred all of Mrs. Garner's interest in all nine lots including her home and adjacent rental property. The conveyance was made for minimal consideration. She deeded the property to her brother and sister-in-law, a less than arms length transaction. The Lees then promptly reconveyed the property to Ruby Garner the next day. Even after these transactions returned title to its state prior to the deeds, the deeds were still recorded. Such recording was an unnecessary act unless there was some other reason to create a record of title. From these facts, no conclusion other than speculation can be made concerning Ruby Garner's belief that she conveyed or received title to this waterfront property by these deeds.[10]
The trial court erred in concluding that no bad faith had been shown. Florida law requires the claimant to show that the instrument was accepted in good faith by the grantee through whom the party seeking adverse possession claims. Simpson, 133 So.2d at 441. A party opposing the claim is not required to show the grantee's bad faith. The trial court erred in finding no bad faith when the finding should have been as to whether good faith had been shown. Quieting title in appellee as to the waterfront property opposite Lots 7, 8 and 9 under a theory of adverse possession under color of title upon this evidence was erroneous.
We now turn to the problems created by our earlier opinion in this case, Bonifay v. Garner, 445 So.2d 597 (Fla. 1st DCA 1984). Upon entry of this final order following remand, appellee City of Pensacola filed a motion for rehearing raising, among other issues, the claim that there had been a public dedication of the entire strip along Bayou Texar and not just of the street right of way. The City relied on the decision in Bonifay v. Dickson for support. This was the first time that the City formally raised the issue, apparently feeling such a claim was precluded by the earlier decision in City of Pensacola v. Walker. The trial court denied the motion and the City raises that as error on appeal.
In Dickson, this court found that a public dedication of the entire strip had occurred while the opinion in Bonifay v. Garner takes the position that no public dedication had occurred, in reliance on the fact that no appeal had been taken as to the trial court's ruling of no dedication.[11]
The law in Florida is clear, as held in Dickson, that under these circumstances a common law dedication to the public of the *395 waterfront strip did occur. In Brickell v. Town of Fort Lauderdale, 75 Fla. 622, 78 So. 681 (1918), the Florida Supreme Court confronted a similar question of whether a street, running along a river with a strip of land between the road and the water, had as its waterward boundary the river itself or was it bounded within other limits further inland. The question was thus who held the riparian rights in the street, the public or the owner in fee of the street. The court affirmed the trial court's finding that there was evidence that the waters of the river were the intended boundaries of the roadway as shown on the original plat. Although the public enjoyed an easement in the strip of land, fee title to the land remained in the hands of the owners of the abutting land.
Admittedly, unlike Brickell, the 1893 plat in the instant case does not show a named road along the waterfront strip. However, the platting of interior lots of Block 70 facing onto Bayou Texar, otherwise without access to parallel side streets, makes little sense, unless one concludes that a street was intended or existed along the strip to afford those landowners access to their land. Further, crossing streets intersect into the strip, suggesting that some means of access to and along this strip was intended. Thus, from these features we conclude that there was an intention by the owners to dedicate at least some portion of the strip. Using the analysis followed in Brickell, we also conclude that the intention was to dedicate the entire strip. The single undulating line along the water defines a lot or street along the water with nothing between the lot or street and the water unless a contrary intention appears in the plat or the dedication. There was an intention in the original plat that this strip be treated as a whole and no expressed or implied intent that it be treated as containing a road and an adjacent strip of land. Either the entire strip was offered for dedication or none of it was. We conclude that all of it was offered when the plat was filed and recorded. Also Brickell would show that appellee Garner holds fee title to the land that has been dedicated in front of Lots 7, 8 and 9 as the abutting landowner. Thus, there is no need to establish ownership by record title or by adverse possession. The law already vests title in him as the upland abutting landowner. However, his use and enjoyment of the land is subject to any public easement.
The question of whether there was an acceptance of the offer must be determined. Acceptance of an offer of public dedication may be by some formal official act or may be implied by a subsequent act of public authorities, such as improving or maintaining the dedicated property, which demonstrates an intent to assume jurisdiction or dominion over it.[12] In Dickson, we found the paving and maintenance of Bayou Boulevard and the installation of storm culverts by the county and city manifested an acceptance of the offer of dedication of the entire strip. Thus, the holding in City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964) was in error in finding no public dedication of the property.
But we decline to overturn Walker in its entirety as title in several other parcels in this strip have been quieted in favor of the upland landowner, premised in part on the holding in Walker of no public dedication. As to those prior actions, the City waived its claim of dedication by failing to assert its claim or to seek to have Walker overturned. The City is also estopped to assert such claim to the other parcels due to its issuing of building permits or otherwise acquiescing to the homes and other improvements constructed on those parcels. Indian Rocks Beach South Shore, 59 So.2d at 656.[13] We are *396 not saying the public easement in this property has been or could be extinguished by adverse possession or by prescription. Such may not occur in Florida. Waterman v. Smith, 94 So.2d 186 (Fla. 1957). Rather we find that as to the prior determinations of title as to other parcels in this strip, the City by its conduct is estopped from now asserting any easement as to those parcels.[14]
However, as to the City's attempt to now assert its claim of public dedication as to the portion fronting Lots 7, 8 and 9, we find the trial court should have considered the City's belated claim. Our prior opinion in Bonifay v. Dickson, finding a public dedication, had issued before the trial court entered its final judgment on remand and was brought to the trial court's attention.[15] Since the matter of the trial court's previous ruling of no public dedication had not been raised on appeal, the trial court was not barred by principles of law of the case from reconsidering that ruling in light of the City's claim and the Dickson opinion.[16]
However, a question of fact remains as to whether the City by its conduct in relation to these parcels may be estopped to assert a claim of public dedication. Therefore we must remand once again to the trial court to resolve a factual matter. On remand the trial court should take evidence as to the City's conduct and actions relative to these parcels. It should then consider under Florida law whether that conduct or acts are sufficient to raise an estopped to the City's claim of a publicly dedicated easement in the parcels.
ERVIN, WIGGINTON and BARFIELD, JJ., concur.
NOTES
[1] Also not disputed on appeal was the trial court's ruling that there was no public dedication of the strip of land outside of the road right-of-way. Garner, 445 So.2d at 600. The trial court relied on this court's decision in City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964) which held no public dedication of the land had occurred. We question the validity of that holding in light of other Florida case law that would find a public dedication of this strip had occurred. See Bonifay v. Dickson, 459 So.2d 1089 (Fla. 1st DCA 1984) and the cases discussed there.
[2] We also distinguished the earlier decision in City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964) as involving different factual considerations. That opinion held there was no public dedication of the strip, finding no evidence of public acceptance of the offer to dedicate the strip beyond the right of way of Bayou Boulevard. In Dickson, it was suggested that Walker be limited and not relied on in deciding future disputes over title to property in this strip.
[3] We note the hearing was held before the opinion in Dickson was issued. However, that decision was brought to the trial court's attention before the final order on remand was rendered.
[4] Mrs. Garner had previously acquired Lots 1 to 12 of Block 70, comprising all of the lots along the block facing onto Bayou Texar. In 1961, Ruby Garner transferred title to Lots 10, 11 and 12 to her son Robert Garner, the appellee. The May 1, 1962 deed contained the following description of the conveyance:

Lots 1, 2, 3, 4, 5, 6, 7, 8 and 9 in Block 70, as per plat of same as drawn by J.E. Kauser in 1893. The grantor hereby conveys the riparian rights belonging to the above numbered lots which is shown by that certain deed from the East Pensacola City Co., Inc. dated October 1, 1908 and recorded in Deed Book 55 at Page 79, of the Public Records of Escambia County, Florida.
This conveyance is intended to include the improvements on the waterfront of this property such as a pier and the fence and the concrete walks thereon, and also the following described property, to-wit: Commencing at the Northeast corner of Block 70, East Pensacola Heights, thence West along the North line of said Block an extension thereof 380.65 feet to Bayou Texar for point of beginning, thence East over line last traversed 59 feet to Bayou Boulevard, thence South 60° 40' West 164.09 feet, thence South 160° 37' West 143 feet to the South line of said Block extended, thence West 82.15 feet to said Bayou Texar, thence Northerly with said Bayou to point of beginning, less that portion of the above described property lying across Bayou Boulevard and due West of Lots 10, 11 & 12, heretofore deeded by the grantor herein, including the riparian rights to the latter described property being conveyed.
[5] This deed also excluded that portion of the waterfront strip opposite Lots 10 to 12 which the deed stated had been previously conveyed by Ruby Garner, the grantee. This is an apparent reference to the 1961 deed from Ruby Garner to Robert Garner conveying Lots 10, 11 and 12.
[6] One map from the local property appraiser showed the property lines for the lots extending into the disputed strip across Bayou Boulevard. The other map was a revised map of the subdivision obtained from the archives of the circuit court clerk. Both of these maps were attached to the final order.
[7] This fencing was also held sufficient to extinguish all implied private easements. The court below also found the 1962 deed between Ruby Garner and the Lees as to Lots 1 to 9 provided an adequate description to convey the strip in front of Lots 10, 11 and 12 to appellee Garner.
[8] See footnote 5, supra.
[9] We note that appellee did not seek to found his claim of adverse possession under color of title to the property fronting Lots 7, 8 and 9 upon the 1974 deeds by which appellee obtained title to these lots from the estate of his mother and from his brother. These deeds may have constituted a sufficient instrument for such a claim. In that event, it would be the good faith belief of appellee as to the validity of the title he received by those deeds that would be considered. Since that claim was not presented to the trial court, we need not address it here.
[10] In fact, the focus on the 1962 deeds is something of a ruse as Mrs. Garner's belief as to her title should have been the same on April 30, 1962 as it was on May 4, 1962. These deeds did nothing to change the title she held. Thus, they were likely more damaging to her claim than helpful.
[11] See footnote 1, supra.
[12] Indian Rocks Beach South Shore v. Ewell, 59 So.2d 647 (Fla. 1952). See, also 1A R. Boyer, Florida Real Estate Transactions § 30.07 (1986) and Bonifay v. Dickson, 459 So.2d 1089 (Fla. 1st DCA 1984).
[13] See also, Trustees of Internal Improvement Fund v. Claughton, 86 So.2d 775 (Fla. 1956); Laube v. City of Stuart, 107 So.2d 757 (Fla. 2nd DCA 1958).
[14] However, the public easement is not extinguished but merely dormant until a change in conditions may once again permit the City to assert its easement.
[15] The trial judge below was also the trial judge in Dickson and therefore was aware of the scope and effect of Dickson on this appeal.
[16] Harris v. Lewis State Bank, 482 So.2d 1378 (Fla. 1st DCA 1986). As an appellate court may reverse its prior holding in the same case, so should a trial court seek to correct its order which is later found to be erroneous before the final order is entered. The trial court's ruling of no public dedication was not addressed on the merits on the first appeal. However, an intervening opinion held on the merits that there was a public dedication. The trial court abused its discretion in refusing to consider the City's claim and to correct its previous ruling as to that issue.