# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-2559
_____

SHAWN M. DAUGHERTY, DON G.
RICHTER, JOHN S. BRIGHT,
DEBORAH A. BRIGHT, RONALD E.
CARNEY, DANIEL WRIGHT, DIXIE
WRIGHT, MICHAEL J. GORDON,
JULIE D. GORDON, and
BENJAMIN LUKE BOYD,

     Appellants,

     v.

ROBERT NEIL MCDAVID,
GEORGIA ARAMINTA MCDAVID,
CHARLES H. MAYNARD, MICHAEL
BENJAMIN ELTZ, RENEE M. ELTZ,
AUGUST ELTZ, JR., and MARY H.
ELTZ,

     Appellees.

_____


On appeal from the Circuit Court for Santa Rosa County.
Clifton A. Drake, Judge.


June 12, 2024


WINOKUR, J.

Appellants raise several arguments as to why the trial court erred in granting summary judgment. Because we find their arguments unpersuasive, we affirm—although for reasons other than those stated by the trial court.

I

In 1948, the Santa Rosa Island Authority (the Authority), an agency of Escambia County, Florida, enacted general covenants and restrictions for all the property under its sovereign domain in Santa Rosa Island. Later, in 1956, the Authority entered into a lease agreement with Santa Rosa County, granting it a 99-year lease to the island. Then, in 1969, the Santa Rosa County Beach Administration (SRCBA), an agency of Santa Rosa County, entered into a lease agreement with Navarre Beach Associates, Inc., to develop the portion of the Santa Rosa Island that eventually became the Bahia Badar Subdivision (the Subdivision) involved in this case. That agreement was later amended in 1970.

At some point, before 1973, title passed to Gatwood Builders, Inc. (Gatwood), who then dedicated the Subdivision's roads, streets, and thoroughfares (including the waterfront portion that became known as the "community beach") to the public in a plat recorded in Escambia County Plat Book 9, page 13. After the Subdivision's streets, roads, and thoroughfares were dedicated, title was once again leased. On May 2, 1985, Santa Rosa County executed a new lease agreement with Standel, Inc. and Dreams Come True, Inc. to develop the Subdivision. That agreement provided for lots 28, 29, and 30 to be leased. But a month later, an amendment was executed giving Standel and Dreams Come True title to all 42 units in the Subdivision.

In 1983, Dreams Come True, Inc. recorded a "Declaration Agreement of [sic], Restrictions, Covenants and Easements." The parties' titles stem from that 1983 Declaration. During the same year, a dock along the northeasternmost corner of the Subdivision was constructed on the "community beach." The dock was there when one of Appellees' predecessors, Thomas Bradley, purchased a six-plex in the Subdivision in 1984. Eventually, certain Subdivision lot owners began using the dock exclusively— especially after a fence was built around the dock to restrict access to it. Those Subdivision lot owners that exclusively utilized the

dock then organized the Summer Sands Townhomes Association to detail, among other things, their exclusive use of the dock. In March 2020, Appellants filed the underlying action to seek a declaration of their rights to utilize the disputed dock and to enjoin Appellees from excluding Appellants from the dock because it formed part of the "community beach."

At first, Appellees attempted to have the complaint dismissed, but that was denied. Later, Appellees filed a motion for summary judgment. They argued that Appellants were attempting to enforce an easement and thus the action was untimely under section 95.11(2)(b), Florida Statutes. The trial court rejected that argument and denied the motion. But Appellees filed a second summary judgment motion. That time, they argued that the action was barred by section 95.12, Florida Statutes, and section 95.11(3)(p), Florida Statutes. The trial court granted final judgment in favor of Appellees and Appellants sought rehearing, which the trial court denied. This appeal followed.

II

Although the trial court correctly concluded that final judgment was warranted in Appellees' favor, we disagree that section 95.12 barred Appellants' action. Still, we affirm because the result was correct.

In their first motion for summary judgment, Appellees argued that Appellants had an easement to use the "community beach"—and by extension, the dock—and therefore Appellants should have brought their action to enforce the easement within the five years provided by section 95.11(2)(b), Florida Statutes. The trial court rejected that argument, but it in fact demonstrates why summary judgment was appropriate.

A

We begin with the Gatwood dedication, which provided that the "community beach" was made available for public use by easement. At common law, a dedication was one way in "which an owner of an interest in land [could] transfer to the public either ownership or a privilege of user for a public purpose . . . ." *Bonifay v. Dickson*, 459 So. 2d 1089, 1093 (Fla. 1st DCA 1984). It

3

"require[d] an intention to dedicate the property to the use of the public, acceptance by the public, and clear and unequivocal proof of [those] facts." *Id.* at 1093–94. Each requirement was satisfied here, creating a public-use easement in the "community beach."

First, we address whether the "community beach" was an intended part of the dedication. Gatwood "dedicate[d] to the public in fee simple all streets, roads, and thoroughfares" in its dedication plat. However, because Gatwood did not expressly name the "community beach" in its dedication, we must determine if the "community beach" was considered a street, road, or thoroughfare.

When construing a dedication we review the "plat as a whole and resolv[e] any ambiguity regarding the extent of the dedication against the dedicator and in favor of the public . . . ." *Dickson*, 459 So. 2d at 1094 (citing *Fla. East Coast Ry. Co. v. Worley*, 38 So. 618 (Fla. 1905)).



When looking at the plat, we see a 304-foot stretch that is identified as the "community beach." That strip runs between the northernmost properties in the Subdivision and the Santa Rosa Sound. Previously, we have said that when a plat depicts the ebb

4

and flow of tidal water by way of "several parallel waved lines" we should take that to mean that there is "a lot or *street* lying on the water, with nothing between it and the water, in the absence of anything appearing to the contrary on the plat or in the dedication." *Dickson*, 459 So. 2d at 1094 (emphasis supplied) (quoting *Brickell v. Town of Ft. Lauderdale*, 78 So. 681, 683 (Fla. 1918)). Further, in Florida, beaches have historically been understood to act as thoroughfares. *See City of Daytona Beach v. Tona-Rama, Inc.*, 294 So. 2d 73, 77 (Fla. 1974) ("The sandy portion of the beaches . . . [have] served as a thoroughfare . . . ."); *Trepanier v. Cnty. of Volusia*, 965 So. 2d 276, 291 (Fla. 5th DCA 2007) (same); *State Beverage Dep't v. Brentwood Assembly of God Church*, 149 So. 2d 871, 874 (Fla. 1st DCA 1963) (defining a "public thoroughfare" as "a frequented way or course, especially, a road or street by which the public has unobstructed passage." (citation omitted)).

Therefore, given the depiction of the Santa Rosa Sound abutting the "community beach" with ebbs and flows and the historical understanding of Florida beaches as "thoroughfares," we can conclude that Gatwood "intent[ed] to dedicate the entire width of the [community beach], from the lot lines to the water's edge, for public purposes." *Dickson*, 459 So. 2d at 1094 (quoting *Brickell*, 78 So. at 683).

Next, as to the public's acceptance of the dedication, it is undisputed in the record that the Santa Rosa public accepted the dedication through their county public officials, who accepted the dedication and recorded the plat. Thus, the dedication was valid and in effect, at the time the underlying dispute arose. *Id.* at 1093–94.

Accordingly, the trial court was correct in concluding that the Subdivision lot owners had a right to the "community beach," but only a public right. *See Robbins v. White*, 42 So. 841, 843 (Fla. 1907) ("A dedication of lands to the public for street purposes, *in the absence of clear contrary intent*, does not divest the owner of the title to the land, but only subjects the land and the title to the public easement for street purposes . . . ." (emphasis supplied)).

B

Given that the "community beach" is subject to a public-use easement, we now address why section 95.12, Florida Statutes, is inapplicable to an easement.

Section 95.12 provides that "*No* action to recover *real property* or its possession *shall be maintained unless* the person seeking recovery . . . was seized or possessed of the *property* within 7 years before the commencement of the action." § 95.12, Fla. Stat. (emphasis supplied). Here, it is undisputed that neither Appellants nor Appellees hold title to the "community beach." Rather, Bahia Badar Inc. does. Since Appellants did not hold title to the "community beach" their action was not one for the recovery of real property, but to enforce the public-use easement granted under the Gatwood dedication. Thus, the application of section 95.12 to bar the action was improper. *See Kitzinger v. Gulf Power Co.*, 432 So. 2d 188, 190–91 (Fla. 1st DCA 1983) (finding that section 95.12 was improperly applied in a case involving an easement).

Further, section 95.12 is inapplicable in this case because at issue here is a public use easement, which cannot be extinguished by adverse possession. *See Waterman v. Smith*, 94 So. 2d 186, 189 (Fla. 1957) ("[A]dverse possession of property held by a city for the use of the public cannot ripen into a prescriptive title."); *see also Bonifay v. Garner*, 503 So. 2d 389, 395–96 (Fla. 1st DCA 1987) (same). Accordingly, the trial court erred in finding that section 95.12, Florida Statutes, applied in this case.

But because Appellants failed to bring their action before the statute of limitations expired, *see Estate of Johnston v. TPE Hotels, Inc.*, 719 So. 2d 22, 26 n.9 (Fla. 5th DCA 1998) (holding that an action to enforce an easement is subject to the statute of limitations under sections 95.11(2)(b), 95.11(3)(p), Florida Statutes); *Conrad v. Young*, 10 So. 3d 1154, 1157 (Fla. 4th DCA 2009) (applying section 95.11(2)(b), Florida Statutes), we agree with the trial court that final judgment in Appellees' favor was appropriate.

Accordingly, the trial court's order granting Appellees' motion for summary judgment is AFFIRMED.

6

ROBERTS and NORDBY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


John H. Adams of Beggs & Land, RLLP, Pensacola, for Appellants.

Phillip A. Pugh of Litvak, Beasley, Wilson & Ball, LLP, Pensacola, for Appellees.