604 So.2d 523 (1992)
SOUTHEAST SEMINOLE CIVIC ASSOCIATION, INC., Appellant,
v.
W.A. Adkins, et al., Appellees.
No. 91-2415.
District Court of Appeal of Florida, Fifth District.
July 17, 1992.
Rehearing Denied August 25, 1992.
*524 Harold L. Downing and Tracy L. Duda of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for appellant.
Phillip H. Logan, Sanford, for appellee, W.A. Adkins.
Todd Pittenger of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees, John F. Gill and Nancy L. Gill.
COWART, Judge.
The owners of a large tract of land subdivided it into home site lots with roadways for ingress and egress. The plat of the subdivision, known as Chula Vista, was not recorded and the deeds to the lots used metes and bounds descriptions.
In 1978, a corporate successor in title to the lands constituting the roadways in the subdivision executed a document (recorded in 1982), granting, giving, and dedicating for the benefit of the general public and of the real property known as the unrecorded plat of Chula Vista, a non-exclusive easement and right of way, on and over, all existing non-dedicated roads belonging to the grantor. In 1986 the corporate titleholder was voluntarily dissolved. Later in 1986, the surviving directors of the dissolved corporation executed a document again dedicating, releasing and conveying all existing roads to and for the benefit of all real property known as the unrecorded plat of Chula Vista.
Later a group of some of the owners of lots in Chula Vista formed the non-profit corporation Southeast Seminole Civic Association, Inc., (appellant), which uses the fictitious name "Chula Vista Homeowners Association". In 1987, the incorporated Homeowners Association obtained a quit claim deed from the surviving directors and trustees of the dissolved corporate title holder to the land constituting the roads in Chula Vista.
Based on the acquisition of the title to the roads the Homeowners Association executed and recorded a lengthy Declaration of Covenants and Restrictions relating to the roads in Chula Vista. This Declaration purports to relate to all of the roads and all of the "lots" in Chula Vista, and makes a distinction between Owners of lots and Members, which are defined as Owners who are also Members of the Homeowners Association. Owners of lots may become Members by executing a Joinder document constituting an acceptance and agreement with the Declaration. The Declaration proceeds to grant non-exclusive permanent and perpetual "membership" easements for ingress and egress over the roads to each lot in favor of each Member (and each tenant, agent, invitee and immediate family of such Member) all subject to many limitations and conditions in favor of the Homeowners Association. The Declaration provides that the Homeowners Association shall have exclusive control over the roads and their maintenance and repair, including *525 paving, drainage structures, street lighting fixtures, landscaping and other improvements, and sets up a system of assessments against all lots in the subdivision providing that all annual, special and other assessments, together with all penalties, interest, costs and attorney's fees shall not only be a lien upon each lot but shall also be a personal obligation of each Member owning the lot.
The Declaration provision for assessments as to non-Member lot Owners peculiarly provides that the non-Member owner
... shall not be obligated to pay any assessment or charge as set forth in this Section 1 [Article V]; notwithstanding, such assessments (or installments) shall remain the personal obligation of any such Owner and shall be assessed proportionally against and payable by each Lot in accordance with this Article as if the Owner of said Lot was a Member of the Association. Such uncollected assessments (or installments), together with late charges, interest and the costs of collection thereof shall become a continuing lien on the Lot which shall bind such property in the hands of the Owner then existing, his heirs, personal representatives, successors and assigns. The personal obligation of the owner then existing shall pass to his successors in title and recourse may be had against either or both in accordance with Section 8 of this Article at the conveyance by Deed of such Lot. [Emphasis added].
Non-Member Owners of lots in Chula Vista brought an action for a declaratory decree against the corporate Homeowners Association claiming that as Owners of lots in Chula Vista subdivision and as members of the general public, they had non-exclusive perpetual easements over the roads and that the defendant corporate Homeowners Association was asserting that the non-Member Owners did not have legal rights of ingress and egress over the roads in Chula Vista[1] and would not have until they became a Member in the Homeowners Association. The complaint also alleged that the Homeowners Association had contacted title insurance companies about the Declaration and the Homeowners Association's assertions resulted in title insurance companies refusing to insure titles in Chula Vista unless the Owners became Members of the defendant Homeowners Association. The non-Member Owners prayed that the court adjudicate that the roads conveyed to the defendant corporate Homeowners Association were subject to easements for ingress and egress in favor of non-Member Owners and in effect, that the non-Member Owners' lots and easement rights could not be encumbered, burdened, restricted, or limited or the title to their lots be rendered unmarketable by actions of the defendant Homeowners Association.
The defendant Homeowners Association filed a combination motion to dismiss and memorandum of law together with an answer, affirmative defenses, counterclaim and third party complaint, totalling 577 paragraphs and 175 pages in length. In summary, the defendant Homeowners Association's position is that the 1978 and 1986 dedication documents' right of ways for ingress and egress over the roads in Chula Vista were ineffective and that the defendant Homeowners Association acquiring the legal title to the roads had the right to do everything attempted to be done by the Declaration of Covenants and Restrictions, including assessing non-Member Owners for road repairs and improvements and imposing liens on their lots. The bases *526 for this claim are: (1) that the 1986 deed did not name a grantee and was thus void, and (2) that there had been no acceptance of the roads by a governmental body acting on behalf of the general public. The reference is to a common law dedication (as opposed to a statutory dedication, see §§ 95.361, 177.081, Fla. Stat.).
The plaintiffs non-Member Owners moved to dismiss the defendant Homeowners Association's second amended counterclaim and amended third party complaint for failure to state a cause of action in failing to establish any legal duty or obligation on the holder of a non-exclusive easement for ingress and egress to maintain or repair the pavement or other surface of the land subject to the easement. The trial court granted the motion and dismissed the Homeowners Association's counterclaim with prejudice. The corporate Homeowners Association appeals. We affirm.
The plaintiff non-Member owners of lots in Chula Vista acquired, by implication of law, an easement over and across the lands designated as roadways in Chula Vista when they bought lots in that subdivision. See Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328 (Fla. 1954); Mumaw v. Roberson, 60 So.2d 741 (Fla. 1952); Spencer v. Wiegert, 117 So.2d 221 (Fla. 2d DCA 1959). As to the implied easements, the lots became dominant estates and the land under the roadway became a servient estate burdened with the obligation of the easement. The implied easement was for the benefit of the lot owners and carried no implied obligation that such lot owners, as owners of the dominant estate, had any duty or obligation to use, maintain, or improve the roadways.[2] The original developer or seller of the lots in Chula Vista could have originally conditioned his conveyances of lots to the acceptance of obligations by the lot owners of some express duty or obligation relating to repairs, maintenance and improvements of the road right of ways but this was not done. After selling lots to Owners who thereby acquired right of ways for ingress and egress, the original subdivider as owner of the title to the roadways, being the servient estate, could not retroactively and unilaterally impose legal duties or obligations on the dominant estates (the lots) or the lot owners relating to the maintenance, improvements or repairs of the roadways.[3] The defendant corporate Homeowners Association having merely acquired from the original subdivider, title to the roadways, a servient estate, stands in no better position or relationship than its grantor, the subdivider, and merely as owner of the servient estate, has no power or authority to create or impose legal obligations for maintenance, repairs or improvements of roadways upon the dominant estate (the lots) or the lot owners.
The Homeowners Association's position essentially ignores the legal concept of implied easements for ingress and egress and uses arguments applicable to the ownership of land failing to recognize those arguments are inapplicable to easements because of historical and inherent differences between legal concepts relating to land title and easements. Under the English feudal land system upon which Florida land title concepts are based, all land was owned by the king as lord paramount. The king infeuded parcels to levels of nobles (mesne lords) who in turn subinfeuded to lower levels. Each level of ownership owed obligations, such as knight service (servitium militare) and shares of produce from the lands (free and common socage), in the nature of rentals and other *527 duties.[4] The existence of duties corollary to land rights is the basis for the legal principle that joint landowners who have discharged duties obligatory on land ownership have causes of action to obtain contribution from other joint landowners whose land interests have been benefited by the discharge of the obligation upon the jointly owned land.[5] However, easements are mere rights to make certain limited use of lands and at common law, they did not have, and in the absence of contractual provisions, do not have, obligations corollary to the easement rights. Furthermore, multiple holders of multiple dominant estates with implied non-exclusive easements over the same servient estate are not such joint owners as would support a right of contribution even if such obligations existed.[6]
The basis for all of the claims of the defendant corporate Homeowners Association contained in the counterclaim and third party complaint are based upon an assumption that the lot owner had no valid easement for ingress or egress prior to the deed of the roadway to the corporate Homeowners Association[7] and were dependent upon receiving a grant of easement from the Association and that the Association could condition its grant of easement to the lot owners upon the lot owners "voluntarily" becoming Members of the Association and by Joinder, agreeing to all of the provisions contained in the Association's Declaration, which assumption is unwarranted and factually and legally incorrect. The trial court was correct in holding that the counterclaim and third party complaint failed to state a cause of action and correct in granting the plaintiffs' motion to dismiss and that order of dismissal is
AFFIRMED.
DAUKSCH and PETERSON, JJ., concur.
NOTES
[1] The Homeowners Association published its position that:

Those who have elected NOT to execute a Joinder do not have legal right of ingress and egress over the roads of Chula Vista. Therefore, at the time of sale or refinancing the property or at any other time that it becomes necessary to examine the Public Records with regard to title to that piece of property, the title examiner will note that as a condition of such sale, refinancing, etc. the property owner must receive a letter from the Homeowners Association giving him the right to ingress and egress. When this letter is requested, the Homeowners Association will NOT give such permission unless a Joinder is executed and recorded in the Public Records AND unless all assessments with interest for the fiscal year beginning June 1, 1988, and for each fiscal year thereafter are paid to the Homeowners Association.
[2] The Homeowners Association seeks to transform the common law rule that between the servient estate and dominant estate, the duty to maintain an easement rests on the dominant estate, Morrill v. Recreational Development, Inc., 414 So.2d 590 (Fla. 1st DCA 1982) into a requirement or obligation that the dominant estate maintain the easement. The rule is that a dominant estate may elect not to maintain or repair the easement. See 2 Thompson on Real Property, § 428 p. 673.
[3] The lot owners cannot be said to be tenants in common of an easement from whom a duty of contribution exists for disproportionate payments required for preservation of the tenancy. See Merrill Lynch v. George, 516 So.2d 1068 (Fla. 4th DCA 1987). Here there are multiple distinct rights of user and not a single easement. 3 Tiffany, The Law of Real Property, § 756 (3d Ed. 1939). See also Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 2d DCA 1960) (no estate or tenancy exists in an easement).
[4] The modern equivalent of obligations resulting from the ownership of lands is the payment of taxes and other encumbrances. Joint landowners have legal rights of contribution relating to such matters. For further discussion of the English feudal land system see 2 Blackstone's Commentaries on the Laws of England Chpt. V (Lewis Ed. 1897).
[5] The obligations imposed on land ownership were likewise the basis for the importance of the ceremonial "livery of seisin" and the later requirement that deeds name a grantee, all to make it convenient to know who owed the duties. The lack of legal obligations upon easement holders explains why grants of easements can be granted to vaguely defined groups of grantees.
[6] As explained in 3 Tiffany, The Law of Real Property, § 756, p. 202 (3d Ed. 1939):

It not infrequently occurs that two or more persons have, as appurtenant to distinct pieces of land owned by them, exactly similar easements in a single piece of land. For instance, one who owns several adjoining lots or parcels of ground may, in conveying them to different persons, grant to each of such persons a right of way in an alley, or over some land retained by them. The various persons thus entitled to similar easements are sometimes referred to as tenants in common of an easement but such an expression is inaccurate. If the right of user vested in one person is appurtenant to one tract, and the right of user vested in another person is appurtenant to another tract, there are two distinct rights of user, two easements, and not one easement. It is only when the two persons have an easement appurtenant to land of which they are tenants in common that they can, with any degree of accuracy, be said to be tenants in common of the easement.
[7] The Homeowners Association concentrates its argument upon attacking the validity of the 1978 and 1986 road dedications made by the Homeowners' grantors before executing a quitclaim deed of the roadways to the Association. The attack is that the dedications named no grantee and were not accepted by any official governmental entity. The general rule, derived from concepts of seisin, that a deed to land is insufficient if it fails to name a grantee capable of taking and holding title, does not apply to a common law dedication for public use, whereby the fee remains in the offeror and the public body merely acquires an easement giving the public right of use. McQuillin, Municipal Corporations § 33.07 (3d Ed.) Acceptance of a common law dedication may be by use of the public, City of Miami Beach v. Miami Beach Improvement Co., 153 Fla. 151, 14 So.2d 172 (1943); Bonifay v. Garner, 503 So.2d 389 (Fla. 1st DCA 1987), Hughes v. Town of Mexico Beach, 455 So.2d 566 (Fla. 1st DCA 1984), though such use must be for the benefit of the public at large. See generally McQuillin, Municipal Corporations § 33.50.